HART, Respondent, vs. CITY OF NEILLSVILLE, Appellant.

*October 29—November 12, 1909.*

*Municipal corporations: Sewerage: Insufficiency: Injury to property: Liability: Notice: Contributory negligence: Burden of proof.*

1. If a municipality, without first having duly adopted a plan, constructs and puts in operation an unsuitable sewer system, it is liable to a private property owner for damage caused proximately to his property by the insufficiency without contributory negligence of such owner.

2. If a municipality puts a sewer system in operation, having first duly adopted plans therefor, and the same is insufficient because of failure to exercise ordinary care in executing such plans, it is liable for injuries proximately caused to private property, without concurrence of contributory negligence of the owner thereof.

3. In the circumstances stated in No. 1 and No. 2, the insufficiency being inherent in the plans or original construction, notice to the city from the beginning of the difficulty, sufficient to charge it with liability, is presumed.

4. If a municipality is free from actionable negligence, respecting adoption of plans for its sewer system and constructing and putting the system in operation, but the system proves not to be reasonably suitable, and it fails reasonably to remedy the deficiency within a reasonable time after having received actual, or constructive, notice thereof, it is liable the same as in case of want of ordinary care inhering in the installation of the system.

5. If a property owner knows, actually or constructively, of a deficiency in a municipal sewer system rendering it dangerous to connect his property therewith by a drain with an open end in

his basement, yet he does so, he is guilty of contributory negligence precluding him from recovering for an injury to such property, proximately caused or aided by such circumstance.

6. If a person connects the basement of his dwelling house with a main sewer in front thereof, by a drain, leaving the basement end open, and he thereafter perceives that it is dangerous to his property, he cannot recover damages from the municipality for injury thus caused to such property, which ordinary care on his part, after discovering the danger, would have prevented.

7. If all the conditions exist, rendering a municipality liable to a property owner because of sewage passing from a public main sewer to and into his dwelling-house basement by way of a drain-pipe connection between such main and such basement, unless the inflow is permitted by a defect in the drain for which the property owner is wholly or partially responsible,—the burden of proof is on the defendant to show want of ordinary care of such owner.

8. In the circumstances stated in No. 7, and it appearing that damage was caused by back flow of sewage from the drain, caused by insufficiency of the sewer system, such sewage reaching the basement through a defect in the drain, as apparently attributable to want of ordinary care of the property owner as attributable to actionable insufficiency of the sewer system, the former cannot recover.

9. In an action for damages upon the ground of an injury having been produced by want of ordinary care on the part of the defendant, it is incumbent on the plaintiff to show, by evidence, with reasonable distinctness, how and why the damages occurred.

10. In the circumstances stated in No. 9, if whether the real cause of the injury was a condition negligently created by plaintiff, without which the injury would not have occurred notwithstanding the negligence of the defendant, or was the latter negligence, rests wholly in conjecture, he cannot recover.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Clark county: JAMES O'NEILL, Circuit Judge. *Reversed.*

Action to recover compensation for injuries, claimed to have been caused plaintiff's residence property by escape of water and sewage into the basement of his dwelling house, by reason of the negligent condition of defendant's sewer system.

The complaint was to this effect, after stating the corporate

existence of the defendant and describing the property in question: Adjoining the basement of plaintiff's dwelling house, there was a well from which he was accustomed to obtain a supply of pure water for domestic purposes. The basement wall, practically, formed one side of the well. The house fronted on Fifth street. The basement was used for a furnace and fuel room and storage place for such domestic supplies as are customarily kept in such places. A part of the sewer system, constructed and maintained by defendant, was located on Fifth street. It was constructed under municipal authority at the expense of abutting property owners; plaintiff paying his due proportion thereof. An opening was left by the municipality in front of plaintiff's property to enable him to connect his premises therewith, and such connection was made with due care under the supervision of defendant's duly authorized officers. The sewer system was unskilfully constructed, in that the portion on Fifth street was too small to accommodate the sewage which was designed to be and was turned into it. The catch-basins were so located as to turn surface water into the sewer, far in excess of its capacity, and the slope toward the outlet was insufficient. It was so constructed, in connection with other portions of the system, that a creek, called Goose-creek, in which great quantities of surface water customarily accumulated, flowed into it, so such inflow, that from catch-basins and from private property connections, greatly overtaxed the capacity of the sewer and caused the contents thereof to back up and escape through connecting drains into basements on abutting property, including plaintiff's premises. The city sewage system was so designed and constructed that substantially all the sewage of the city, discharged from the numerous private connections, and all the surface water, including much of that flowing into Goose creek and then into the sewer connected therewith, were obliged to pass to the outlet on the bank of O'Neill creek through a sixteen-inch pipe, which was much too small

to discharge the same with sufficient freedom to prevent back-
ing up. By reason of the facts aforesaid, on and between
July 3, 1903, and March 24, 1904, to wit, on said July 3d,
and on July 9th, August 4th, September 12th, 13th, and
14th, and March 24th, the connection between plaintiff's
basement and the main sewer was filled up and rendered use-
less, so that large quantities of the contents of the main were
discharged into said basement and into the well, filling said
basement to a depth of several feet and the well to a like level,
rendering the dwelling house untenantable, destroying the
well; causing the ground around and a part of the well to cave
in, the basement wall to settle and fall in and the building to
settle, its walls to crack, and the structure otherwise to be se-
riously damaged. The sewer was constructed without any
plans having been adopted and without any regard to adapt-
ing capacity to the work required, with the consequences
stated. Prior to the injuries to plaintiff's property, defend-
ant had notice of the dangerous condition of the sewer sys-
tem, as alleged, and that such condition was remediable by
enlarging the outlet into O'Neill creek and closing the inlet
from Goose creek. When plaintiff connected his property
with the sewer system he did not know of its insufficient char-
acter. He thereafter used ordinary care to guard his premises
from invasion from the sewer, and such invasion as occurred
was without his fault. Because of the wrong complained of,
his property has been damaged to the extent of $1,500.

The trial court sustained a demurrer to the complaint for
insufficiency. On appeal, the decision was reversed. The
case is reported in 125 Wis. 546, 104 N. W. 699.

Such proceedings were duly had, after the reversal afore-
said, that defendant answered, admitting all allegations of
the complaint, not fatally affecting the claim for damages, al-
leging that the sewer system was constructed, in all its parts,
according to a plan duly adopted. and putting in issue all alle-
gations as to negligent construction or maintenance or insuf-

ficiency of the system, and alleging that the connection of plaintiff's premises with the system was made by himself without supervision, direction, consent, or interference on the part of the defendant.

The cause was submitted to a jury for a special verdict resulting in the following findings: (1) Defendant adopted a plan for the sewer system before it was constructed. (2) At the time and place in question, it was defective and insufficient. (3) Such condition was the proximate cause of the injuries to plaintiff's property. (4) Defendant had notice of such condition a sufficient length of time before the injuries were caused to enable it by the exercise of ordinary care to have remedied the insufficiency. (5) Defendant was guilty of a want of ordinary care in respect to the construction of the sewer system. (6) Plaintiff's property connection with the sewer system was not insufficient or defective. (7) He exercised ordinary care in constructing and maintaining the connection. (8) Plaintiff was damaged by reason of defendant's negligence $950, as follows: $246 on July 4th and 9th and August 5th, and $704 on September 12, 13, and 14, 1903.

In due course, there was a motion for defendant to change the answers to various questions, which was denied, and also for an order setting aside the verdict and for a new trial on several grounds, which was also denied.

Judgment according to the verdict was rendered for the plaintiff.

For the appellant there was a brief by *Homer C. Clark* and *Geo. L. Jacques,* city attorney, and *L. M. Sturdevant,* of counsel, and oral argument by *Mr. Jacques* and *Mr. Sturdevant.* To the point that plaintiff was guilty of contributory negligence and therefore cannot recover, they cited 28 Cyc. 1338; *O'Brien v. Worcester,* 172 Mass. 348; *Valparaiso v. Ramsey,* 11 Ind. App. 215, 38 N. E. 875; *Guthrie v. Nix* (Okla.) 49 Pac. 917; *German T. School v. Dubuque,* 64 Iowa, 736; *Simpson v. Keokuk,* 34 Iowa, 568; *Hoehl v. Mus-*

*catine,* 57 Iowa, 444; *Fulleam v. Muscatine,* 57 Iowa, 457; *Cooper v. Dallas,* 83 Tex. 239; *Dallas v. Cooper* (Tex.) 34 S. W. 321; *Green v. Ashland W. Co.* 101 Wis. 258; *Steinhofel v. C., M. & St. P. R. Co.* 92 Wis. 123; *White v. C. & N. W. R. Co.* 102 Wis. 489; *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593; *Bolin v. C., St. P., M. & O. R. Co.* 108 Wis. 333; *Wilson v. Waterbury,* 73 Conn. 416; *Mayor, etc. v. Small,* 108 Ga. 309. That he was guilty of such negligence as a matter of law is shown by the following illustrative cases: *Hogan v. Winnebago T. Co.* 121 Wis. 123; *Bremer v. Pleiss,* 121 Wis. 61; *Schrunk v. St. Joseph,* 120 Wis. 223; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331; *Ray v. Stuckey,* 113 Wis. 77; *Walters v. C. & N. W. R. Co.* 113 Wis. 367; *Sheriff v. Oskaloosa,* 120 Iowa, 442; *Buckley v. New Bedford,* 155 Mass. 64, 67.

For the respondent there was a brief by *S. M. Marsh* and *O. W. Schoengarth,* attorneys, and *James Wickham,* of counsel, and oral argument by *Mr. Marsh* and *Mr. Wickham.*

MARSHALL, J. On the former appeal it was held that if, as alleged, appellant failed to duly adopt a plan for its sewer system before constructing the same, or, having so adopted a plan, failed to reasonably construct the system in accordance therewith, it was guilty of actionable negligence and liable to respondent for such damages to his property, as were attributable to such negligence as the proximate cause thereof and were not produced by his own want of ordinary care concurring with appellant's wrong. Further it was held that, if the appellant was free from actionable negligence in respect to the adoption of plans for its sewer system, or execution of the same, yet, in operation, the system proved to be dangerously inadequate for the purpose thereof, and it failed to remedy the deficiency within a reasonable time after actual or constructive notice thereof, it was guilty of actionable negligence, and was liable for any damage to respondent's property, at-

tributable to such negligence as the proximate cause thereof, and not produced by want of ordinary care on respondent's part concurring with that of appellant. Such is the law from an original standpoint, but, in any event, such is the law of this case. *Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563; *Darcey v. Farmers' L. Co.* 98 Wis. 573, 74 N. W. 337; *Collins v. Janesville,* 111 Wis. 348, 359, 87 N. W. 241, 1087; *Habenicht v. C., St. P., M. & O. R. Co.* 134 Wis. 268, 114 N. W. 497.

The decision of the jury was in favor of appellant, as to whether plans for the sewer system were adopted, but in favor of respondent, as to whether ordinary care was exercised in constructing the system. It is the opinion of the court that the effect of such findings is that appellant did not follow, reasonably, the adopted plans in constructing the system and putting it in operation. There is ample evidence of that which need not be referred to in detail. Probably the most significant of any is the evidence that the plan did not contemplate connecting the system with Goose creek, which connection may well have been regarded by the jury as an efficient cause of overloading the system, particularly, on that part of the street on which respondent's property was located.

Since the jury found that, although a plan for the sewer system was duly adopted, it was negligently constructed, in that ordinary care was not exercised to execute the plan, it is considered that such want of ordinary care relates to the defective character of the system, which the jury found was the proximate cause of the injury to respondent's property. Therefore, the defect being inherent in the original installation of the system, in that proper regard for the adopted plans was not exercised, notice of the insufficiency which became evident by the operation, necessary to charge it with liability for damages attributable to its negligence as a proximate cause, must be conclusively presumed. The rule applies as in case of imperfect original construction of a highway. Lia-

bility of the municipality for consequences to travelers proxi-
mately caused by original insufficiency commences at once,
while, if the construction is free from actionable imperfec-
tions at the start, and the highway subsequently becomes un-
safe, such liability does not commence till the municipality
has actual or constructive notice of the defect and reasonable
opportunity to remedy the deficiency, or to efficiently guard
against injury happening to users in the exercise of ordinary
care.

Because of the foregoing, several suggested errors in the
admission of evidence, bearing on the question of notice to the
appellant of the defective condition of the sewer system, are
immaterial. In this connection, we will add that we cannot
discover harmful error in any of the complaints as to the re-
ception or rejection of evidence, and with that we will pass
the subject, as one not requiring treatment of the numerous
incidents in detail, cited to our attention.

The most serious matter is involved in the question of
whether the evidence shows conclusively that respondent was
guilty of contributory negligence, precluding a recovery as to
part, if not the whole, of the damages claimed. On that we
will refer, briefly, to the undisputed facts and the inferences
unmistakably arising therefrom.

Appellant knew, as well as respondent, the general condi-
tions rendering the sewer insufficient to carry off all the water
and sewage liable to flow into it without danger of overload-
ing, causing the contents to back into drains connected with
property abutting on the street, and discharge into basements
below the standing level of contents of the sewer and its con-
nections,—at the time he made his connection. He knew
that the surface drainage from a large territory was into the
main on Fifth street by way of street catch-basins and drain
connections with the surfaces of lots and roofs. He knew
that the sewage from numerous occupied buildings on the
street was discharged into the main. He knew that such ac-

cumulations from these and many sources as would neces-
sarily occur, especially during periods of severe rainfall, had
no way of reaching the outlet of the sewer system except
through the eight-inch main on Fifth street, which served
catch-basin connections of the same size and numerous six-
inch connections with basements on abutting property. He
knew that the drain connections with the main were at the
side thereof and that the slope from the basement end of his
drain to the top of the main was not much over eighteen
inches. He knew, or ought to have known, because he could
not have helped it had he paid ordinary attention to the mat-
ter, that the slope of the sewer was so slight, the slope from
the opening of the basement to the main so little, and the
height of water liable to occur in the catch-basin near his
property, during rainstorms, such that the high point would,
necessarily, at times, be above the basement open end of his
drain. He must have known that the end of his drain in the
basement was only some four feet below the opening in the
nearby catch-basin. It had been well known for over a year
before he made his connection with the sewer, that, during
rainstorms, basements on defendant's street were liable to be
flooded from the sewer, unless the connecting drains were
armed with checks to prevent it. It seems respondent must
have known this, as one or more of his nearest neighbors had
suffered, and remedied the difficulty by a check valve in the
drain pipe. He knew that water when permitted to flow will
move till it comes to a rest, all points within the zone of re-
straint being at a common level, and that it will move till it
reaches boundaries permitting such common level. In that
situation he deliberately connected his drain with the main
sewer, leaving the basement end open and below the level to
which contents of the sewer system and its connections were,
with reasonable certainty, liable to frequently reach, in that
the end of the six-inch drain pipe was only closed to the ex-
tent of inserting therein a four-inch iron pipe, thus leaving

over half the area of the opening for the free passage of such contents into the basement, upon any occurrence of the main being overloaded so as to cause a substantial standing level in the catch-basins above the open end of the drain.

That he might as well have left the basement end of his drain entirely open, as to leave it as he did, seems plain. How can any one reasonably say to thus leave a drain, under the conditions detailed, is consistent with ordinary care? Could one fairly say, in any case, that it would be consistent with ordinary care to leave open the basement end of a drain pipe leading to a small main sewer, designed to serve the purpose of surface and sanitary drainage for a large territory, such basement end being only four feet below the level of surface openings of nearby catch-basins? This question, it seems, must be answered in the negative.

It is a matter of common knowledge that the connections between conveniences on the main floors of dwellings and other houses and public sewer systems are, universally, supposed to be water-tight, for the purpose, among others, of preventing escape of the contents of the sewer or of the drain connections, at times of temporary overloading of the main, into basements. To leave free openings in such connections below the level which water may reasonably be expected to reach in nearby catch-basins during severe rainstorms, would, it seems, be the height of folly; would be negligence of such high degree as to seemingly invite disaster; a reckless disregard of the operation of natural laws.

In view of the foregoing we cannot escape the conclusion that the answer of the jury, wholly acquitting respondent of contributory negligence, and the answer to the effect that all the injuries complained of were proximately solely caused by appellant's negligence, are not supported, at all, by the evidence, and should have been changed to some extent, if not altogether.

As indicated by the fact that the court submitted the case

to the jury for a finding as to the damages caused to respond-
ent's property on and prior to August 5, 1903, separately
from such as were caused on September 12th to September
14th, inclusive, the circumstances of the latter are somewhat
different from those respecting the former.    At the time
water and sewage first appeared in the basement, respondent
saw it demonstrated that the open end of his drain pipe was
the immediate cause of the mischief.   By the undisputed evi-
dence, it was apparent to him, or any one by ordinary inspec-
tion, that it was perfectly feasible to prevent a recurrence of
the back flow from the main sewer by either discontinuing en-
tirely the drain, or sealing up the basement end around the
connection with the iron pipe so as to permit water to rise
above such end a short distance into such iron pipe, or by put-
ting in a check valve appliance, used in such cases, to allow a
flow of water towards the main sewer but prevent any back
flow.   He did neither till after August 5, 1903.    Then he
put in a check valve and made a closed channel from the tile
drain up through the iron pipe connection to the points of use
on the floor above.    That, by the undisputed evidence, would
have prevented any further invasions from the main sewer,
had there not been an opening in the drain caused by a frac-
ture in a section of tile, just outside the basement wall,
through which opening water and sewage escaped from the
main, broke through the wall, and did the damages assessed
by the jury at $704.

. On the branch of the case relating to the $704 aforesaid,
does the evidence warrant a conclusion, to a reasonable cer-
tainty, that the tile, found to be broken, was, to one in the ex-
ercise of ordinary care in laying such a drain as that in ques-
tion, apparently suitable for use when it was put in place by
respondent, and it nevertheless broke under back pressure
from the sewer, caused by the negligent construction found by
the jury?

There is no direct evidence that the section of tile which

was found broken was perfect, or apparently perfect, when it was put in place. The flange end only was fractured. There is no proof that the disengaged part lay in place, or near by, indicating that the breakage occurred after the drain was completed. The record is silent as to these matters, though respondent, and no one else, could have made proof on the subject. For aught that appears, the tile when put in place had a broken flange end. Was it not incumbent on respondent to give some explanation of the cause of the defect, showing affirmatively that the tile was in good condition when laid and was afterwards broken? True, the presumption, in absence of any evidence to the contrary, would be in favor of the drain having been free from defects when laid, and the burden of proof be on appellant to establish contributory negligence. But when respondent made proof that the drain tile was, in fact, defective, and that such condition permitted the sewage to escape into the basement, and that he, himself, laid the drain, and there were persuasive indications that the tile was imperfect from the beginning, was not the burden then cast upon him to rebut that situation, at least to the extent of showing that the piece broken out of the tile was in place or near by as if separated by some inward force?

As the case went to the jury, there was no definite evidence as to how the tile may probably have been broken after being laid. True, there was proof that the action of water, under some circumstances, produces peculiar, and sometimes unlooked for and not easily explainable, results; but no satisfactory proof was given that the pressure of water caused by a head of five feet—which from the evidence is the ultimate that could have been produced, since the location of the broken tile was about that distance below the point of relief at the street opening of a nearby catch-basin—could cause any such consequences as the breaking of an ordinary six-inch tile at the flange. The flange, if the tile were properly laid, was wholly outside the one inserted into it, so the pressure of water

from within the drain was communicated to the flange only by pressure against the in-surface of the nonelastic pipe which it encircled. Does not that indicate that the flange was broken before the tile was laid, at least so as to call for some explanation from respondent? Under the circumstances, was there more than room for conjecture that the back water from the sewer caused the fracture? If it was as reasonable to conclude that the tile was imperfect when laid as that it was fractured thereafter, then there was no jury question on the evidence. Surely if respondent was so reckless as to place a broken tile in the drain pipe, obviously, he must take the consequences.

It is an established rule of law that, in a case of this sort, if the circumstances leave the question of whether the negligence of the defendant was the proximate cause of the injury without contributory negligence on the part of the plaintiff, wholly a mere matter of conjecture, there can be no recovery. That is, as applied to the facts here, if the immediate proximate cause of the damage was the broken tile, and it is as reasonable to conclude that the existence of the defect was caused by negligence of the plaintiff, as that it was caused by negligence of the defendant, so that one can only conjecture where the truth lies, it is impossible to reach a conclusion in respect to the matter with that reasonable certainty requisite to a verdict, and, therefore, no jury question was presented.

The principle stated was declared in *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729, with many supporting authorities from this and other courts. It was there said, in a case of this sort, it is incumbent upon the plaintiff to show, by evidence, with reasonable distinctness, how and why the damages occurred. To present two or more states of the case, each equally with the other pointing to the proximate cause of the injury, thus only putting one conjecture against another as regards the real cause of the mischief, comes far short of establishing a cause of action.

It is difficult to reach the conclusion, in the absence of any definite explanation of how the tile came to be in place with the piece broken out of the flange; any affirmative evidence that it was not in that condition when laid; not even that the disengaged piece was in place or around, indicating a recent break, or that it was found at all, in face of the fact that pressure of water in the drain could not well have affected the flange end without first fracturing the end of the pipe, which, so far as appears, was perfect—that back water from the sewer had anything to do in producing the defect. The major probabilities weigh very heavily on the side that plaintiff is responsible therefor, having laid the tile in the defective condition it was found. Certainly, it seems that, respondent was bound to furnish some definite evidence to rebut the inference of his fault arising from the situation described, before charging appellant with responsibility for a result which would not have happened but for the opening in his drain pipe upon his own property, which appellant had nothing to do with and had no right to interfere with.

In view of the foregoing the opinion of the court is, that the verdict should have been corrected so as to find respondent guilty of contributory negligence, and that judgment should have been rendered on the corrected verdict for defendant.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to correct the verdict in accordance with this opinion and to render judgment in favor of the defendant.

WINSLOW, C. J., and DODGE, J., dissent.