Wing and another, Respondents, vs. Stackhouse and another, Appellants.

*September 14—October 4, 1910.*

*Sheriffs: Wrongful attachment of personal property: Temporary possession: Surrender pursuant to agreement: Liability for conversion.*

1. Mere temporary possession by a sheriff of personal property which he has wrongfully attached as the property of another, and which he does not sell but subsequently turns over, in pursuance of a settlement of the attachment suits, to the duly authorized agent of the person from whom he took it, gives no right of action to the owner against the sheriff for a conversion of the property.

2. In an action against a sheriff for conversion, where it appears that at the direction of the attorney for numerous attaching creditors, among whom were the plaintiffs themselves, the sheriff attached the property in question, which was in fact the property of the plaintiffs, but that before a sale of the property a settlement was made by all the attaching creditors, whereby they received payment of a portion of their respective claims and the sheriff was directed to turn over the property attached to a person claiming to act as the agent for the debtor, the plaintiffs, being chargeable with knowledge of all the facts in regard to the settlement and not having disavowed the same or offered to return the money received in settlement, cannot be heard to say that the sheriff was guilty of a wrongful act in turning over the property according to the settlement agreement.

Appeal from a judgment of the circuit court for Sauk county: E. Ray Stevens, Circuit Judge. *Reversed.*

This is an action for conversion of twelve bundles of green hides in December, 1908. At the time of the alleged conversion the plaintiffs were partners dealing in hides and skins at Whitehall, Wisconsin, and the defendants were respectively the sheriff and deputy sheriff of Sauk county. The evidence showed that on November 16, 1908, the plaintiffs, through the plaintiff *Terry,* purchased the hides in question

of one George Kurth, who was then a butcher in business at Spring Green, Wisconsin, and paid cash for them, Kurth agreeing to ship them to Whitehall the next day. At the same time *Terry* advanced to Kurth $100 for hides to be shipped in the future. Kurth did not ship the hides purchased, but allowed them to remain in the scale room attached to his butcher shop, with tags on bearing the names of plaintiffs. About the middle of December, 1908, Kurth absconded, and on December 21st seven of his creditors commenced attachment suits, and the defendant *Bauer*, as deputy sheriff, seized Kurth's property in the attachment actions, but did not find the twelve bundles of hides involved in this action. All the attachment suits were brought by Thomas W. King as attorney, and among them was an action by the plaintiffs to recover the $100 advanced. About December 24th *Bauer* found the hides involved in this action in the scale room and asked the attorney, King, what he should do. King told him to attach them and he did, removing them to the butcher shop with the other property. The butcher shop was owned by one Fronk, who was also one of the attaching creditors. About the middle of January, 1909, George Kurth's father came to Spring Green, claiming to have authority from his son to adjust his son's financial affairs. He entered into negotiations with King to settle up all of the attachment claims and finally arranged to settle them all for forty cents on the dollar. He had previously arranged to turn the property over to Fronk. Mr. Kurth, Sr., paid King the money in settlement of all the claims, and King (Deputy Sheriff *Bauer* being absent from town) turned all the attached property, including the hides in suit, over to Fronk, who afterwards sold it. The plaintiffs received the $40 from King in full settlement of the attachment suit, but the precise date of the receipt is not in evidence. The payment was made, however, sometime before the commencement of present action, and soon after it was made the plaintiffs knew that Kurth had

never delivered the hides which *Terry* bought November 16th. The plaintiffs have never repudiated settlement or offered to return the money received.

In response to two questions the jury found (1) that the defendant *Bauer* took the identical hides purchased by the plaintiffs on November 16, 1908; (2) that the value of such hides on November 23d was $75.16. Judgment being rendered for the plaintiffs on this verdict, the defendant appeals.

For the appellants there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *E. A. Evans.*

*James A. Stone,* for the respondents. ·

WINSLOW, C. J. The evidence shows without dispute that the deputy sheriff never in fact sold the property in question. He attached it, removed it to the butcher shop, and when the attachment claims were settled turned it over with all the other attached property to Mr. Kurth, Sr., who claimed to be acting for his son in making the settlement. Had George Kurth himself settled up with his attachment creditors and thereupon received back from the deputy sheriff the hides in question the case would be in principle indistinguishable from the case of *Enos v. Cole,* 53 Wis. 235, 10 N. W. 377. An action of trespass for the recovery of nominal damages would have been the only remedy of the plaintiffs against the deputy sheriff, for the reason that the temporary possession held by him would constitute no injury. Had it been shown that Mr. Kurth, Sr., was the duly authorized agent of his son to make the settlement and close out the business the same result would doubtless follow. But the proof seems to have been defective on this point and only showed that Mr. Kurth, Sr., claimed to be his son's agent.

Now, it may be barely possible that had the deputy sheriff not levied on the hides in question Mr. Kurth, Sr., would not have turned them over to Fronk, though this is the merest possibility, and verdicts are not to be based on mere possibili-

ties.    Conceding that there is such a possibility, still we think the evidence demonstrates to a moral certainty that the mere temporary interference of the sheriff had no effect on the course of events, and that Kurth, Sr., would have followed exactly the same course in settling up the attachment suits and turning over the property to Fronk had the interference of the deputy sheriff never taken place.

We also think that under the circumstances shown in this case the plaintiffs are in no position now to attack the elder Kurth's authority to act for his son.    They either knew or were charged with knowledge of all the material facts with regard to the settlement of the attachment suits, and they have not disavowed the settlement, but, on the other hand, stand here with the fruits of the settlement in their possession.    Long before this action was commenced they knew that George Kurth never delivered the hides which they bought but retained them in his own possession; they knew that he absconded while presumably still in possession of them; they knew that the elder Kurth assumed to settle the suits for his son, and they must have known that the way in which he did it was by taking the property which his son left and transferring it to Fronk.    It seems to us that they have very clearly approved of the transaction and cannot now be heard to say that the act of the deputy sheriff in surrendering the attached property to the elder Kurth was wrongful.    It may be that they have an action against the elder Kurth for conversion of their property, but that question of course is not here.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment for the defendant notwithstanding the verdict.