ZUWODNICEK, Respondent, vs. HIGGINS SPRING & AXLE COM-
PANY, Appellant.

*October 11—October 29, 1912.*

*Master and servant: Unsafe working place: Cause of injury: Evi-
dence: Sufficiency.*

1. To warrant a recovery in a personal injury action the cause of
   the injury must not rest in conjecture, but must be established
   to a reasonable certainty.
2. In an action for an injury to an employee working at a machine
   for trimming steel springs, caused by a piece of steel striking
   his eye, the evidence (stated in the opinion) is *held* to sustain
   findings by the jury to the effect that the piece of steel was
   caused to be thrown from the floor by the fall, from the frame-
   work of said machine, of a heavy knife which had been negli-
   gently placed on the machine by defendant's foreman.

APPEAL from a judgment of the municipal court of Racine
county: WM. SMIEDING, JR., Judge. *Affirmed.*

Action to recover damages for personal injuries. The de-
fendant owns a machine shop and is engaged in the manu-
facture of steel springs and axles at the city of Racine. The
plaintiff at the time of the injury was about thirty-one years
of age, a blacksmith by occupation, and had been in the em-
ploy of the defendant, in the capacity of a general workman,
for about nine years. On the 11th day of September, 1911,
the plaintiff was directed by the defendant to operate a cer-
tain machine in its plant known as a "spring trimmer." The
machine is an upright iron frame, is equipped with station-
ary lower, and movable upper, knives, is run by belt power,
and is used for cutting iron and steel and shearing and trim-
ming off the ends of metal springs. Its dimensions are thirty-
one inches deep, forty-one inches wide, and about thirty
inches from the ground to the top of the frame, from which
the knife hereinafter referred to is claimed to have fallen.
The knife in question was a piece of steel 4⅞ x 5⅛ x 1½ inches
and weighed seven pounds: the surfaces, one and one-half

inches in width, were practically level, so that the cutting surface of the knife formed nearly a right angle with the perpendicular surfaces. The complaint alleges that while plaintiff was operating this machine,

"a heavy edged tool or knife, designed for use in another trimming machine in said plant, having been taken therefrom for the purpose of being sharpened, and having been theretofore carelessly and negligently placed on the machine which the plaintiff was operating, fell from the said frame of said machine to the floor below, a distance of about two and one-half feet, striking said floor where plaintiff was working, with considerable force, and causing a splinter or piece of steel then and there being upon said floor, to fly with sufficient force to pierce or penetrate the right eye of the plaintiff and destroy the sight thereof; . . . that the machine upon which plaintiff was working was insecurely fastened to the floor, and was loose on the foundation, and while being operated at the time of said injury, and a long time prior thereto, to the knowledge of the defendant, moved back and forth, shook and vibrated; . . . that the floor at the place where said heavy edged tool or knife fell was an uneven brick surface, and at all times was littered with large and fine particles and pieces of steel similar to that which was driven into plaintiff's eye; . . . that said defendant was careless and negligent in placing said heavy edged tool or knife upon the frame of said machine, in view of the fact that said machine was insecurely fastened to the floor, and that such careless and negligent act rendered the place where plaintiff was working unsafe, under the circumstances stated, and that by reason of the alleged carelessness and negligence of the defendant, plaintiff suffered the loss of his right eye."

The answer admitted the formal, but denied the material, allegations of the complaint.

A special verdict was returned finding (1) that plaintiff was injured by being struck in the right eye by a piece of steel or iron caused to be thrown from the floor by the fall of a heavy knife from the framework of the machine at which he was working; (2) that plaintiff had no knowledge of the

knife being on his machine before it fell to the floor; (3) that plaintiff's foreman, Martin Christensen, placed the knife on the framework of plaintiff's machine; (4) that said Martin Christensen was guilty of a want of ordinary care in placing said knife on said machine; (5) that the placing of the knife on said machine was the proximate cause of plaintiff's injury; (6) that plaintiff was not guilty of any want of ordinary care which contributed to produce his injury; and (7) damages, $2,500.

On the coming in of the verdict the usual motions were made by the respective parties, and from a judgment entered in favor of plaintiff on the verdict the defendant appealed.

For the appellant there were briefs by *Lawrence A. Olwell* and *Burr J. Scott,* and oral argument by *Mr. Scott.*

*Wallace Ingalls,* for the respondent.

VINJE, J.    Defendant claims that plaintiff's evidence does not establish an issue for the jury because (1) it fails to show that Christensen, its foreman, placed the knife on the machine and that it fell therefrom; (2) because it would be impossible for the knife to fall from the machine if it was placed thereon; and (3) because it would be impossible for plaintiff to be injured as he was by a flying scrap of iron starting from a place on the ground near the toe of his foot. If plaintiff's case rests in conjecture or in a weight of mere possibilities, then the verdict in his favor cannot be sustained. To warrant a recovery the cause of the injury must be established to a reasonable certainty. *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729; *Hamann v. Milwaukee B. Co.* 127 Wis. 550, 106 N. W. 1081; *Schell v. C. & N. W. R. Co.* 134 Wis. 142, 113 N. W. 657; *Hart v. Neillsville,* 141 Wis. 3, 123 N. W. 125; *Stock v. Kern,* 142 Wis. 219, 125 N. W. 447; *Houg v. Girard L. Co.* 144 Wis. 337, 129 N. W. 633; *Samulski v. Menasha P. Co.* 147 Wis. 285, 133 N. W. 142.

Plaintiff's testimony as to how the injury occurred is as follows:

"I was about one and one-half feet away from the machine. I did not measure the distance. As I turned the iron fell to the floor and knocked my eye out. The piece of iron was 5″ x 7″ and more than an inch thick. It was a knife from the machine like the one I was working on. The foreman brought it from the machine shop. I know because he took them out and went to sharpen them. I know because I saw him loosen and take them out. I saw him coming back from the east toward the machine with them. He was coming between my machine and the bench. He had two knives, one in each hand. Q. Now do you know how that knife happened to fall from that machine? A. I know that when it fell and knocked my eye out and I saw it lying on the floor. I know it is the knife the foreman had because there are no other kind of knives. Later on I looked it over and it was freshly sharpened. When it fell the foreman was fastening the other knife to the machine. The knife that fell belonged in the other machine, the one the foreman was working on, that is the machine to the north. I did not see the knife on my machine before I was injured. As I turned around it was just falling. There was no one around there at the time except the foreman. . . . The knife that fell to the floor weighed about six or eight pounds. I know that the piece that cut my eye came from the floor because when the knife fell it immediately struck me in the eye. There was no other machine operating in the vicinity. So far as I know it could have come from no other place. The piece of iron fell from the bed of the machine to the floor, a distance of two and one-half feet. . . . My foot was so injured that it pained me frequently for about two weeks. The knife struck me on the very end of the large toe. It fell on the floor as the lower end hit my toe. It fell first on the floor and then on the toe. . . . I did not see the iron strike my toe, but I felt it. That was after it knocked my eye out. When my eye was struck I jumped and was frightened and moved away from the place. I do not know whether the knife fell lengthwise or flat. I do not know whether it hit the ground at the same

time that it hit my foot.    If it had struck my foot before it struck the ground, I think it would have cut off my toe.    That is the best answer I can make as to whether it hit my foot or the ground first. . . . I did not see this iron as it was falling. When it fell it made a big noise and immediately something struck me in the eye.    I heard this iron strike the scrap.    It was a very big noise.    Something hit me in the eye right away. . . . I saw the knife or die later when it was lying on the floor.    I saw it right after I was hit in the eye.    It is a fact that both eyes closed immediately and the water was running from both.    I wiped my eyes twice right there at the machine.    Later on I held a handkerchief over my right eye, and I could see with the other one.    At that time I saw the knife. . . . I want to be understood as saying that I stopped to look at the knives.    I saw the knife because I was looking at it later on.    I just wiped my eye and then I looked at the knife immediately.    I did not pick it up, I just looked it over.    I saw that it was freshly sharpened."

Christensen, defendant's foreman, testified on behalf of the plaintiff as follows:

"I was on the other side of the machine to the east at the time of the accident.    I do not remember whether I had taken the knives out to sharpen them.    I will not swear that I did not.    I do not remember.    It is possible that I did so. . . . These are the only two similar machines in the factory.    They are called trimmers.    I do not remember that just before the plaintiff was hurt that I was bringing a couple of these knives from the sharpening room.    I could not swear that I was not doing so because I do not remember. I do not remember that one of these knives was there on the floor after the plaintiff was injured.    I do not remember seeing any knife on the floor.    I will not swear that there was not one there. . . . There was nothing to prevent my having seen a knife on the floor, if it had been there, but I did not pay any attention to the floor, and even if it had been there it could be there and I might not notice."

The testimony of the same witness, given in behalf of the defendant, does not materially vary or modify that given in behalf of the plaintiff in so far as it relates to the placing of

the knife on the frame of the machine.  Defendant offered no other evidence to show that the knife was not in fact placed on the machine by Christensen at the time of the accident. Upon such testimony it seems clear that the jury was warranted in finding that the knife was placed on the frame of the machine by defendant's foreman.  While plaintiff did not see it lying on the frame of the machine, he does testify that he heard it fall, that it struck his toe and injured it, that he saw it lying on the floor immediately after the accident below the frame of the machine, where he claimed it was placed, and if it be true, as the jury had a right to believe, that the knife fell upon the floor, and upon plaintiff's toe, as he testifies, then the only legitimate inference that can be drawn from the testimony is that it fell from the frame of the machine, as the evidence fails to disclose that there was any other place from which it might have fallen and struck plaintiff's toe in view of the position he was in at the time of the injury.  Plaintiff testifies that he saw the foreman shortly before the injury with two knives in his hands.  The foreman and plaintiff both unite in saying that there were only two machines in the factory having knives similar to this, namely, the one plaintiff was operating and the one the knives of which the foreman was engaged in inserting at the time of the accident.  It therefore seems reasonably certain that the knife was placed on the frame of the machine by defendant's foreman and the jury was warranted upon the testimony in so finding.

The next claim is that if the knife was placed on the frame of the machine by defendant's foreman it could not have fallen therefrom.  This is based on the testimony given on behalf of the defendant to the effect that there was little or no vibration to the machine when in operation, that tests were made by placing a knife on the frame of the machine in various positions when it was in operation and that it did not fall; that it was also placed just far enough in on the frame

of the machine so that it would lie thereon, but be dislodged by a very slight jar, and that the machine was operated when the knife was so placed, and yet it did not fall.    On the part of the plaintiff there is considerable evidence to show that the machine at the time of the accident was not securely fastened to the floor, that it vibrated considerably when in operation, and that it shook more or less from side to side when springs were being trimmed or unusually heavy material was being cut.    It is a matter of common knowledge that almost all machines driven by belting and shafting vibrate more or less when in motion.    Such fact, taken in connection with the direct testimony produced on behalf of the plaintiff that the machine did vibrate and shake when operated, is sufficient to support the verdict that the knife fell from the machine.

The last point urged by defendant is that it was not possible for a scrap of steel, starting from a position near plaintiff's toe, to strike plaintiff's eye and inflict the injury to which the doctor testified.    This is based chiefly upon the theory that if the flying piece of steel started from a place near plaintiff's toe it could not have cut the eye itself without cutting the lids, and plaintiff's eyelids were not injured.    Both the cornea and the crystalline lens of plaintiff's right eye were cut.    The cut into the crystalline lens was directly opposite the outside cut, so that the cuts in the two membranes were directly back of each other.    From this fact it is argued that the piece which struck the eye must have come in a horizontal direction if the plaintiff was looking straight forward or substantially so, and that the only way in which he could have been injured as he was by an object starting from a place near his toe would be by his looking down and forward at an angle of about forty-five degrees.    While there is some testimony on behalf of plaintiff to the effect that his head was in a downward and forward position at the time of the injury, yet such testimony is vague and unsatisfactory.    It seems, however, as the fact probably was, that plaintiff could not tell accurately just in what direction he was looking at the time he was in-

jured.   He may have been looking downward and forward.
But if he was not, it cannot be assumed that when a knife
such as the one in question struck a steel scrap which may
have been slightly curved or of an irregular outline it would
fly in a straight direction towards his eye.   It is practically
impossible to foretell or ascertain the path that such a moving
object will take or did take.   If set in motion through the
air, it may describe a course which is neither a straight line
nor a uniform curve of any known description.   So that it
is possible that plaintiff's eye may have been injured as it
was by a scrap of steel starting from a point near his toe even
though he was not looking downward and forward.   We con-
clude, therefore, that if plaintiff's evidence is to be believed,
and that was a question for the jury, there is nothing con-
jectural or improbable either in the fact that the knife was
placed where it is claimed it was placed by the defendant's
foreman, or, if so placed, that it fell from the machine owing
to the vibration thereof, or in the manner in which the eye
was injured from the scrap of steel flying from near plaintiff's
toe, and the judgment must therefore be affirmed.

As this injury happened after the Workingmen's Compen-
sation Act went into effect, the question of the negligence of
a fellow-servant is not in the case.

*By the Court.*—Judgment affirmed.