HOTCHKISS, Administrator, Appellant, vs. GREEN BAY & WESTERN RAILROAD COMPANY, Respondent.

*April 9—April 29, 1913.*

*Negligence: Evidence: Verdict based on conjecture: Railroads: Running over child on track: Break in fence.*

1. Where there is no direct evidence of how an accident occurred, and the circumstances are as clearly consistent with the theory of a nonactionable cause as a cause that is actionable, no foundation exists for a finding of negligence.
2. In an action against a railway company for the death of a six-year-old child run over by a gravel train, where there was some evidence of a board being broken from a gate leading onto defendant's right of way near where the accident occurred, but none that the deceased entered through such break, and a conjecture that he did so enter had no greater probability to sustain it than that he entered through, under, or over the fence at some other point, a finding by the jury that the child got upon the track by reason of the broken board in the gate was unwarranted.

3. It appeared in such case that the train consisting of seventeen loaded cars was running slightly down grade at a speed of twenty miles an hour; that the trainmen saw the deceased lying upon the track after rounding a curve about 500 feet distant, but were unable to distinguish his body as that of a human being until half that distance was passed, when every effort was made to stop the train without avail; and that one of the brakemen climbed down and attempted to shove him off the track but was too late. The evidence further tended to show that the engine and brakes had been recently inspected and were in good condition; that the deceased lay upon the track without movement, paying no attention to shouts or to the bell and whistle; and that his face was white like the face of the dead. *Held*, that there was no support for a finding that the defendant's servants in charge of the train were wanting in ordinary care in the operation and management of the same.

APPEAL from a judgment of the circuit court for Trempealeau county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

Action to recover damages for the death of John Wainorek, a child six years of age, who was run over by defendant's gravel train, under circumstances stated in the opinion. The jury found (1) that there was a section of a board broken out of the gate of the fence on the south side of defendant's right of way at the point in question at the time of the accident; (2) that it had been broken out of the gate a sufficient length of time to have enabled the defendant in the exercise of ordinary care to have discovered and repaired the same before the time of the accident; (3) that John Wainorek got upon the defendant's track by reason of the broken board in the gate; (4) that he was not dead at the time he was struck by defendant's train; (5) that defendant's servants in charge of the train were wanting in the exercise of ordinary care in the operation and management thereof; (6) that such want of ordinary care was a proximate cause of the death of John Wainorek; (7) that the deceased was wanting in the exercise of ordinary care which contributed to his death; (8) that his parents were wanting in the exercise of ordinary care which contributed to his death; and (9) damages in the sum of $500.

From a judgment in favor of the defendant entered upon the verdict the plaintiff appealed.

G. O. *Linderman* and *John F. Kulig,* for the appellant.

For the respondent there was a brief by *Gaveney & Barlow,* and oral argument by *John C. Gaveney.*

VINJE, J. Counsel for plaintiff state in their brief that "the sole question submitted to the court is, Was there any evidence to sustain the findings of the jury that either the plaintiff's intestate, John Wainorek, or his parents, were wanting in any ordinary care that contributed to the death of plaintiff's intestate?" This is no doubt an interesting question under the evidence in the case, but before it can be reached by the court the defendant's negligence must be established to be the proximate cause of the death of John Wainorek. For if there was no negligence on the part of the defendant, or if there was, but it cannot be said with reasonable certainty that such negligence was the proximate cause of the injury, then no liability follows. A careful perusal of all the testimony in the case satisfies us that it does not support the third and fifth findings of the jury.

The parents of deceased lived about twenty rods south of defendant's railroad track, which at the point in question runs substantially east and west. From the house to the railroad track there is a fairly well beaten path leading to a gate on the south side of the track and a corresponding gate on the north side thereof. These two gates give access to a pasture lying north of the railroad. The path stops at the north gate. The evidence does not disclose who occupied or used the pasture. At about 4 o'clock in the afternoon of July 31, 1910, the deceased came to the field of a neighbor, Mr. Ressler, who was cutting grain about forty rods south of the railroad track, and inquired for Mr. Ressler's boys, stating that he wanted to play with them. He was told that they had to work, and Mr. Ressler next saw him in his field up towards the railroad

track, and did not see him again until after the accident, which occurred about twenty-five minutes later. Neither the father nor mother of the deceased gave any testimony as to the whereabouts of the boy on the afternoon of his death. The defendant was running a gravel train west from White-hall to Arcadia at a rate of about twenty miles an hour. It consisted of about seventeen loaded cars. The engine was headed east pulling the cars behind it. On the front of the tender were two brakemen acting as lookouts. It was slightly down grade where the accident occurred. About 800 or 1,000 feet east therefrom was a deep cut, and a curve in the track extending about 500 feet west from the mouth of the cut. This train with the same crew had been hauling gravel over the track for two or three weeks previous to the time of the accident. The two brakemen and the roadmaster, Mr. White, who was in the engine looking ahead, noticed an object upon the track when about 500 feet away from it as soon as it became visible from the curve. When the train crew first discovered the object upon the track the brakeman and engineer thought it was a chunk of sod that had fallen from previous loads hauled over the road. The roadmaster, Mr. White, said it looked to him as though it was a bird, crow, or some object of that kind. He could not distinguish it as the body of a human being. The train was about 250 feet away from the boy before any of the members of the crew were able to recognize the object as a human being. John Goman, one of the brakemen, who acted as a lookout, first saw it was a boy and he said the train was then about 200 to 250 feet away. As soon as he discovered it was a child he gave the engineer a signal to stop. The engineer threw the steam off the cylinder, used the emergency application of the air-brake, blew the whistle, and rang the bell. He applied all the air there was and used every possible means to stop the train in the shortest distance. The brakeman John Goman "hollered" when he saw the child was not making any move

of any kind, and took a chunk of coal and threw it at the boy. The chunk struck the ground about a foot and a half away from the boy and kind of rolled up against him, but he made no movement of any kind. The brakeman Skiporski, after signaling the engineer to stop, slid down off the tender and onto the track, and tried to knock the boy off the track with his feet, but he was too late.

As near as can be ascertained from the testimony of the train crew, who were the only ones that saw deceased on the track, his head and body were lying directly outside of the south rail, with his legs crossed and resting on the south rail, on the calf of one of his legs just below the knee. His knees were drawn up over the rail, and he was lying about twenty feet west of the gates. He had on short pants, a light shirt, and was barefoot. They all testified that he made no movement whatever as the train approached him, and that the color of his face was the color of a dead person. The train was not stopped until the engine and cars had run over him. The crew hurried back and found the boy dead. There was no movement or muscular action of any kind that they could ascertain, and very little flow of blood. He was found with one leg cut off and the body cut in two above the hips. The testimony further showed that defendant's engine had been recently inspected and that it and the air-brakes were in good working order. The deceased was an active, healthy boy, six years one month and nineteen days old at the time of his death, and, so far as appears, of average intelligence for a boy of that age.

The jury found that the boy entered the track by reason of the broken board in the gate. There is a sharp conflict as to whether or not there was a broken board therein previous to the boy's death, many witnesses testifying that there was none until a part of one was taken off for the purpose of making a stretcher for the body after the coroner's inquest. But the finding that a board was broken off before his death is sup-

ported by evidence and cannot be set aside. We fail, however, to find any testimony that tends to show that the boy entered the track through the break in the gate, much less by reason thereof. Ressler, who saw him last before he came upon the track, said the boy was on the field of grain he was cutting up towards the railroad track, but whether near or far from the gate the evidence does not disclose. This was about twenty-five minutes before the accident. That a boy six years old would find no difficulty in getting through an ordinary fence is self-evident. The gate, if entire and closed, would have presented no obstacle to him had he desired to enter the track. So it cannot be said with any reasonable degree of certainty that the deceased entered the track through or by reason of the hole in the gate. It is mere conjecture that he did so, and a conjecture that has no more probability to sustain it than that he entered through, under, or over the fence at another point. Verdicts cannot rest upon mere conjecture or possibilities. *Collins v. Janesville,* 99 Wis. 464, 75 N. W. 88; *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729; *Wing v. Stackhouse,* 143 Wis. 343, 345, 127 N. W. 955; *Houg v. Girard L. Co.* 144 Wis. 337, 348, 129 N. W. 633; *Marcott v. M., St. P. & S. S. M. R. Co.* 147 Wis. 216, 133 N. W. 37; *Zuwodnicek v. Higgins S. & A. Co.* 151 Wis. 118, 138 N. W. 48; *Kaszubowski v. Johnson S. Co.* 151 Wis. 149, 138 N. W. 54. In *Hyer v. Janesville, supra,* the authorities on this subject are collected and discussed, and it was there said:

"The principle of law does not admit of question or exception, that where there is no direct evidence of how an accident occurred, and the circumstances are as clearly consistent with the theory that it may be ascribed to a cause not actionable as to a cause that is actionable, it is not within the province of the jury to guess where the truth lies and make that the foundation for a verdict."

There is likewise no evidence whatever to support the finding that defendant's servants in charge of the train were

wanting in the exercise of ordinary care in the operation and management thereof. They were running a gravel train of seventeen loaded cars on a slightly down grade at the rate of about twenty miles an hour. That the engine was headed towards the train so the tender was ahead is not an unusual method of running such trains. Two brakemen sitting on the front of the tender acted as lookout, and they discovered the object on the track as soon as the train rounded the curve sufficiently for them to do so. Almost immediately afterward the engineer and Mr. White discovered it also; but all thought it was an inanimate object—or a bird of some kind. The brakemen testified they kept their eyes upon it, and as soon as they saw it was a human being they gave the signal to the engineer, who at the same time discovered that the object was a boy. The steam was then shut off, the air-brakes applied, bell rung, and whistle sounded. As before stated, the trainmen did everything in their power to avert the accident after they discovered that a human being was upon the track. When the position, immobility, and size of the boy is taken into account it is not strange that they came within about 200 feet of him before they were able to tell that the object on the track was a boy and not a piece of sod or some other inanimate thing.

Having reached the conclusion that the negligence of the defendant in maintaining a broken gate cannot with any reasonable certainty be found to be the proximate cause of the boy's death, and that the finding of negligence in the operation of the train is not supported by the evidence, it follows that there is no liability on the part of the defendant, irrespective of the contributory negligence of the deceased or his parents. The case is a peculiar one, and leaves upon our minds the impression of an unexplained mystery.

*By the Court.*—Judgment affirmed.