O'Brien and another, Appellants, vs. Chicago, St. Paul, Minneapolis & Omaha Railway Company, Respondent.

*March 18 — April 4, 1899.*

*Court and jury: Nonsuit: Direction of verdict.*

1. The rule that disputed questions of fact on evidence are to be answered by the jury applies only where the evidence is such that there is room for different reasonable inferences therefrom. If the truth of propositions of fact upon which the right of recovery depends be not within the range of reasonable probabilities, no question in regard to them need be sent to a jury though there is evidence as to their truth.

O'Brien and another vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

2. To entitle plaintiff to have his alleged cause of action submitted to a jury for decision, he must produce evidence from which sensible men of unbiased minds can reasonably decide the issues in his favor.

3. The rule that, in determining whether a nonsuit should be granted or a verdict directed, the evidence of plaintiff only should be considered, contemplates the consideration of such evidence in the light of matters of common knowledge and facts established beyond reasonable controversy in the case, whether by evidence of plaintiff or defendant or both.

4. If the evidence of plaintiff, taking the most favorable view of it in his behalf that it will reasonably bear, including all reasonable inferences therefrom, and assuming that it establishes all that it tends to establish when viewed in the light of conceded or undisputed facts, will not support a verdict in his favor, the verdict, on request being made therefor, should be directed against him.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Affirmed.*

The appeal is from a judgment entered pursuant to a directed verdict in defendant's favor.

The action is for the recovery of damages for breach of a contract to convey land, on facts alleged in substance as follows: May 1, 1883, defendant contracted in writing to sell and convey to D. M. Sabin and Walker, Judd & Veazie, lands described in Schedules A and B attached to the complaint, those in A to be conveyed when paid for and those in B when defendant should acquire title thereto, the consideration being two dollars per thousand feet on the standing pine on the lands according to estimates furnished the purchasers by defendant. July 20, 1883, the purchasers paid the full amount of the purchase price, part in cash and part in notes, each note being for one twentieth of the deferred amount, one to mature every six months and the last on February 1, 1893. Before the commencement of this action plaintiffs became owners of the conveyed lands and all rights under the aforesaid contract. After they became such owners, they

O'Brien and another vs. Chicago, St. Paul, Minneapolis & Omaha R. Co.

made all the deferred payments as they fell due, till all were paid. The total amount paid for the land in Schedule B was $16,000. Such lands were never conveyed as per contract, but for a valuable consideration were released by defendant to the United States, thereby disabling it from complying with the requirements of such contract. Defendant had a good title to the Schedule B lands, and its conveying the same in breach of the contract entitled plaintiffs to damages in the sum of $48,000, that being the value of the lands in excess of the contract price. Judgment was demanded for $64,000 and interest on the $16,000 alleged to have been paid for the Schedule B lands, to wit: On $2,500 from February 1, 1892, on $6,700 from August 1, 1892, and on $6,700 from February 1, 1893.

Defendant answered that before the alleged making of a land contract with Sabin and Walker, Judd & Veazie it agreed to sell the lands mentioned in the complaint, under certain conditions, to one Humbird, who thereafter assigned his contract to Sabin and Walker, Judd & Veazie, and that in part performance of such contract it conveyed the Schedule A lands and before the action was commenced received full payment therefor. The answer admitted that the Schedule B lands had not been conveyed under the Humbird contract, and took issue with all the allegations of the complaint as to plaintiffs being entitled to the Schedule B lands or damages for nonconveyance of the same, or the recovery of money paid therefor, or that any money had been so paid. The court decided that there was no satisfactory evidence that defendant ever made a contract to convey the Schedule B lands, other than the one with Humbird, or that any money had been paid to defendant on such contract or otherwise for such lands, and therefore directed a verdict for defendant, on which judgment was entered and from which this appeal was taken, as before stated.

For the appellants there was a brief by *S. J. Bradford,*

attorney, and *Clapp & Macartney*, of counsel, and oral argument by *N. H. Clapp*.

For the respondent there was a brief signed by *H. L. Humphrey* and *Thomas Wilson*, attorneys, and *Thomas Wilson*, of counsel, and the cause was argued orally by *Thomas Wilson*.

MARSHALL, J. The main question here is, Was there evidence from which the jury could reasonably have found facts requisite to a recovery by plaintiffs on the cause of action set forth in the complaint? It is often said in jury cases that if there is any evidence to establish the existence of a disputed fact, and a conflict in that regard, the question respecting it is for the jury. That rule should be construed as calling for evidence worthy of belief in regard to the subject. If the truth of the proposition be not within the range of probabilities, in the light of reason and common sense, in view of facts of common knowledge or facts established in the case beyond reasonable controversy, then evidence of the existence of the fact involved does not prove such existence, or tend to prove it. It is not evidence tending to establish the allegation of fact, because there can be no tendency that way so long as all reasonable probabilities are opposed to it. It is often said that if different, unbiased minds may draw different inferences from the evidence, it is for the jury to draw the proper inferences. Just so,— but only within the range of reasonable probabilities. Evidence, or an inference therefrom, showing a bare possibility of the existence of a fact in issue, will not do. Verdicts can be based only on reasonable probabilities. Mere possibility cannot establish probability. *Gibbons v. W. V. R. Co.* 58 Wis. 335; *Finkelston v. C., M. & St. P. R. Co.* 94 Wis. 270. If evidence be not sufficiently persuasive to an unbiased mind, as to the existence of a fact, giving full effect to the most favorable inferences in that regard that can be reason-

ably drawn therefrom, to remove the question of its existence beyond the realms of mere conjecture or possibility, it is the duty of the court, when asked to do so, to pass judgment on the situation and direct the proper verdict and judgment. *Hyer v. Janesville*, 101 Wis. 371; *Cawley v. La Crosse City R. Co.* 101 Wis. 145. In short, before the plaintiff in any case is entitled to have the issues made by the pleadings submitted to the jury, he must do more than merely produce evidence of the facts upon which his cause of action rests. He must produce credible evidence in that regard,— evidence from which sensible men of unbiased minds can reasonably decide the issues in his favor.

The books say, and the rule is, that in determining whether a question is for the jury the trial court should look only to the plaintiff's evidence, because if there be a conflict of evidence between adversaries in a jury case it is for the jury to say where the truth lies. But that does not mean that a trial judge must shut his eyes to undisputed facts, whether established by one party or the other. It means that the evidence of the plaintiff only is to be considered in case of a conflict between that of the defendant and that of the plaintiff where there is room for different reasonable inferences. Where the conflict is between evidence on the one side and some fact established beyond controversy on the other, which fact renders the truth of the evidence on the former so improbable that no reasonably sensible person can believe it, such fact is by no means to be excluded from consideration in determining whether or not there is a question to be passed upon by the jury. On the contrary, the fact is to be considered and held controlling in the case. So the rule really is that, in determining whether or not a question should be sent to the jury, the evidence of the party on whom the burden of the proof rests in regard to it, only, should be considered, in connection however with all facts which are admitted by the pleadings or otherwise estab-

lished beyond dispute in the case. *Badger v. Janesville Cotton Mills*, 95 Wis. 599; *Flaherty v. Harrison*, 98 Wis. 559; *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277; *Cawley v. La Crosse City R. Co.* 101 Wis. 145.

From the foregoing we may deduce the following: If the evidence of plaintiffs in this case, taking the most favorable view it will reasonably bear, including all reasonable inferences therefrom, assuming that it establishes all that it tends to establish when viewed in the light of undisputed facts, would support a verdict in plaintiffs' favor, then the case should have been submitted to the jury for decision, and we should say that the evidence is sufficient for such verdict if, in view of conceded or undisputed facts on plaintiffs' evidence, there is room for unbiased minds to reasonably differ as to where the truth lies, not regarding, in reaching that result, mere conjecture or possibility.

After carefully considering the evidence here in the light of what has been said, we are unable to say that the decision of the trial court is wrong. It is useless to discuss the evidence at length and in detail for the purpose of demonstrating the correctness of our conclusion. That would serve no purpose except to satisfy the learned counsel for appellants that the record has received a thorough examination and that the decision is based on a proper understanding of it. The distinguished counsel are too well known here for us to believe they need such, or any, assurance in that regard, other than the statement of the fact.

We are unable to find any satisfactory evidence in the record that the alleged contract ever had an existence or that any money was ever paid thereon to apply on the Schedule B lands, or that the contingency ever arose which entitled plaintiffs, or those under whom they claim, to demand a deed or damages because of a failure of defendant to make title to such lands. On the contrary, the evidence shows beyond room for reasonable controversy that defendant

never had title to, or could have acquired, the lands under its land grant, which was understood to be the source of its title if title was to come to it at all. The evidence is particularly weak on the claim that defendant received pay for the B lands, the sum of $16,000 or any other sum,— so weak that it cannot be said there was any definite and certain evidence in plaintiffs' favor, looking at the record from the standpoint most favorable to them. It is conceded that if any payment was made it was in May, 1882; that the only person who handled money on that occasion, on account of the purchasers of the land, was D. M. Sabin; that he paid John M. Humbird for his claim on the A and B lands upwards of $30,000; that Sabin and his associates then knew that defendant did not have title to the B lands; and that, if plaintiffs' theory is in accordance with the facts, the B lands, which were not to be conveyed till defendant obtained title thereto, were paid for in full when the contract was made, yet the lands to which defendant then had title were not then paid for either in whole or in part, and nothing was paid thereon till a deed thereof was made in 1883, and then only a small down payment was made, the balance being agreed to be paid one tenth each year thereafter and secured by a mortgage on the land. Why the land, title to which had not been acquired by defendant, was paid for in full, and that to which it had acquired title was paid for in the different manner indicated, is wholly without explanation. That business men would have entered into such a transaction is exceedingly incredible. If plaintiffs' witnesses are to be believed, the B lands were paid for in full in advance of defendant's obtaining title to them and at a time when its officers knew, or ought to have known, the probabilities were all against its claim of title. Not only that, but no claim seems to have been made on defendant, either for title to the lands under the contract or for a return of the money paid thereon, for many years after the transac-

tion referred to took place. Strange as that may seem, it would not of itself sustain the decision of the court in taking the case from the jury, if there was definite evidence that the alleged contract was made and the B lands paid for in May, 1882, as claimed.

The alleged fact of payment rests, as stated, wholly on the evidence of D. M. Sabin, who, after a most searching cross-examination, could not be made to testify that any definite sum of money was paid to defendant at the time of the making of the contract. He could not tell whether, on the occasion referred to, $30,000 or $50,000 or what sum was used, or how much of it was paid to Humbird, or how much to defendant, or whether all was paid to Humbird. He could not produce any check, or receipt, or memorandum, or writing of any kind whatever, to show that the money was paid, to whom or how paid. He merely gave his impressions as to what took place, saying he could not go into details or state definitely anything about the matter. That was in substance the effect of his evidence, and yet it is said there is evidence upon which the jury might have found the existence of a fact as to which the only person concerned with it personally, who testified in regard thereto in plaintiffs' behalf, was unable to say more than: " My impression is that $30,000 was used. My impression is it was $40,000 or $50,000. I cannot tell how much was used or how much Humbird was paid out of it. I cannot say how much of the first payment went to Humbird. I cannot say whether all of the first payment went to Humbird." That is a fair example of Sabin's testimony upon which plaintiffs contend that defendant received $16,000 of the first payment in accordance with plaintiffs' claim. The best that Mr. Sabin could do was to guess at the matter from his recollection of what took place eighteen years before without a memorandum of any kind from which to refresh his memory. Certainly the jury could only have substituted their guess for that of the witness. They

could not have found a verdict by weighing probabilities based on the evidence, for there was no evidence of a sufficiently definite character to raise a probability in plaintiffs' favor. The jury certainly could not have done more under the circumstances than Sabin,— conjecture and guess in regard to the matter. That will not do. Unless there is room within the range of reasonable probabilities for a jury of fair, unbiased men to say they are satisfied from the evidence, to a reasonable certainty, of the existence of facts requisite to a recovery, rules of law and not the finding of a jury must control the situation. *Cawley v. La Crosse City R. Co.* 101 Wis. 145. That gives full effect to the rule that where the evidence will admit of more than one reasonable inference it is for the jury to say which is in accordance with the truth.

There were some exceptions preserved, to rulings on the admission and rejection of evidence, but whether such rulings were right or wrong it is considered could not have changed the result. The case stands substantially without any definite evidence as to any money having been paid to defendant on the B lands. That of itself was sufficient to defeat a recovery, and is sufficient to sustain the ruling of the trial court in directing a verdict for defendant.

*By the Court.*— The judgment of the circuit court is affirmed.