BEYERSDORF, by guardian *ad litem*, Respondent, vs. CREAM CITY SASH & DOOR COMPANY, Appellant.

*December 12, 1900 — March 19, 1901.*

*Master and servant: Negligence: Personal injury: Special verdict: Finding opposed to possibility: Sufficiency: Presumptions.*

1. In an action against his employer to recover for injuries caused by plaintiff's hand coming in contact with a "slat saw," it is *held* impossible, in the light of undisputed physical facts, that the injury could have been caused, as found in the special verdict, by the portion of the saws above the feed table.

2. The finding as to the particular peril from which the injury resulted being thus conclusively wrong, other findings of the special verdict as to defendant's negligence proximately causing the injury, plaintiff's knowledge of perils, instruction as to same, and exercise of

Beyersdorf vs. Cream City Sash & Door Co.

care to avoid them, are vitiated, because they refer to the particular peril mentioned: and the whole verdict is rendered inconclusive and insufficient to support any judgment.

3. Where in such a case there is a reasonably possible theory of the injury consistent with the employer's due care in the equipment and operation of the machine, the mere happening of the accident does not suffice to establish his negligence and liability.

APPEAL from a judgment of the superior court of Milwaukee county: ORREN T. WILLIAMS, Judge. *Reversed.*

Action by plaintiff, who, on March 10, 1898, when fourteen years and eight months of age, suffered loss of a hand as an employee of defendant in its factory at Milwaukee, while working at a device called a "slat saw," which, so far as possible in words, may be described as follows:

The east or operating part consisted of a flat plane or feed table, twenty-eight inches long north and south, and four inches wide, bounded on the west by a rigid vertical side two inches high and open towards the east. The feeder stood at the north end of this feed table. About nineteen inches from the north end there were hung on a shaft below this table two rigid circular saws about nine inches in diameter and extending above the said feed plate or table about two and one-eighth inches. These saws revolved towards the feeder at the north. About four inches north of the north edge of these saws was a toothed wheel which, revolving, engaged any piece of wood pushed up to it by the feeder and pushed it end first against the saws. Above the saws was a curved, nearly semicircular, rigid plate or guard of steel of about two inches greater radius than the saws, the ends of which, respectively, in front and back of the saws, extended downward to within one and three-quarters inches above the feed table, the purpose of which was to hold down any piece of wood while passing through the saws, which, but for such guard, would be thrown violently upward and northward as soon as it had passed from under

the toothed feed wheel above mentioned. The two saws were about one half or nine sixteenths of an inch apart, and the inner or westerly one about the same distance from the vertical west side of the feed table, so that as strips of wood were passed through they were sawed into two slats about one half inch thick, any excess of the strip outside of the east saw going to waste. These strips were previously prepared so as to be approximately one and three-quarters to two inches thick vertically, and one and three-eighths to one and a half inches wide, and of lengths from eight inches to two feet. It was the duty of the feeder standing at the north to slide these strips onto and along the feed table until the toothed wheel engaged them and fed them against the saws, each strip serving to push its predecessor through the saws under the overhanging steel guard, and on southward till they reached the south end of the feed table, about six or seven inches beyond the saws, and about four and one-fourth inches beyond the south end of the overhanging guard.

South or southeast of the machine was stationed a boy whose duty it was to receive the slats into which the strips had thus been sawed, and to put them in a pile to be carried to other machines, and to put the waste strip cut off by the easternmost saw into a pile for kindling wood. At this latter work plaintiff was engaged on March 10, 1898. He had been at work for defendant a little less than a month; had first worked at the slat saw something more than two weeks before; had worked at it in all on five or six different days,— the whole time aggregating about one day. He had at first been shown his duty to take away the slats after they had passed through the saw, such instruction not indicating a necessity of reaching nearer the saws than the south end of the feeding table. The testimony is conflicting as to whether he had been warned of the peril of injury from getting his hands in contact with the saws. While

so engaged the feeder, Schultz, having fed through all of the strips which he had and pushed the last one of the bundle into the saws, had turned away to get more strips. Plaintiff testifies that he took hold of the slats of this last piece, and as he took hold of them felt the stick jerk backward, and when he looked the stick was gone and his hand was gone; that he took hold of the slats for the purpose of taking them away. Further than this he knows nothing of how the accident occurred. His right hand was cut completely off, except the thumb, which was sawed through except the flesh on the side away from the hand. The hand was cut off at a point from an inch to an inch and a half towards the wrist from the knuckles. The fingers were found scattered in various directions north and south of the machine, underneath the feed table amongst the sawdust, and on top of the feed table. A considerable quantity of blood was observed at various points of the machine beneath the feed table, and a few spots above it and upon the teeth of the saws.

The defect alleged was the absence of boxing around the upper part of the machine on top of the feed table, the plaintiff testifying that when he first worked on the machine there had been a wooden box which covered the whole device, having sides both east and west of the saws, while at the time of the injury the box in use had merely a top and the west side to it, so that it was open on the east side. This box was placed over the saws by the feeder to prevent sawdust, etc., flying back in his eyes.

The jury found in favor of plaintiff in answer to a series of seventeen questions, and among others, in answer to question 8, that the plaintiff's hand was cut by that portion of the saws which projected above the saw table (feed table); and, in answer to question 9, that the last stick fed to the saws by Schultz, when grasped by plaintiff to be removed, jerked back, and pulled plaintiff's hand against the saws,

causing the the injury.    From judgment in favor of plaintiff defendant appeals.

*Joseph B. Doe*, for the appellant.

For the respondent there was a brief by *Whitman & Ryan* and *Tarrant, Kronshage, McGovern & Dielmann*, and oral argument by *W. D. Tarrant* and *A. B. Whitman*.

The following opinion was filed January 8, 1901:

DODGE, J.    The situation disclosed by the evidence presented several methods by which plaintiff's hand might have come in contact with the saws, including at least the possibility of a wholly needless placing of his hand in contact with the saws, within a peril which could not but be obvious to any one who had ever seen a circular saw cut wood. Whether or not the evidence of the situation supplied foundation for anything but a guess or conjecture as to how the injury in fact occurred may perhaps be doubtful, but upon the verdict before us it becomes unnecessary to consider or discuss any theory other than that which has specifically been adopted by the jury.    If that theory be not the correct one, then it cannot be said that the verdict has negatived a different theory which might involve contributory negligence or might be so beyond the range of reasonable expectation that the condition of the machine could not be deemed proximate cause.    We had in this case the somewhat unusual advantage of having presented before us on the argument the machine itself, and of opportunity to test the suggestions and theories of counsel thereby.    It is quite impossible to express in words at all clearly the result of such observation.    Certain physical facts were thereby made obvious, such, for example, as that the space below the south end of the overhanging steel guard — under which, on the theory of plaintiff's counsel, his hand, in contact with the strip of wood, must have passed in order to reach the saw — was not sufficient to allow plaintiff's hand to pass under it

towards the saws if that hand was on top of the strip of wood; for the end of the guard was only, at most, a quarter of an inch higher than the strip itself. That plaintiff's hand must have been placed on top of the stick if he had hold of it at all results conclusively from the wound, which is squarely across the hand from little-finger side to thumb side, so that the hand must have been at right angles to the plane of the saws and to the stick passing through them. If the stick were grasped in any other manner, as by seizing the south end of it, the ends of the fingers would have been towards the saws, and the course of any cuts must have been longitudinal, from the ends of the fingers towards the wrist. Again, the infliction of this wound at a place in the hand nearly four inches from the ends of the fingers is rendered impossible at any place above the feed table, even if it could have got within the overhanging guard; for the upright or west side of the feed table was only one and one-half inches west of the easternmost saw, and other complete obstacles to intrusion of the hand above the saws were only one half or three quarters of an inch further west. Besides these facts, it is established, without controversy, that all the portion of the saws above the feed table, except, perhaps, the tips of the teeth at the top of the saws, was occupied by the stick passing through them, so as to render impossible the cutting through of plaintiff's hand. There could, at most, have occurred only comparatively shallow lacerations from the upper part of the saw, under the conditions which existed.

From the foregoing circumstances, and others almost impossible of intelligible description without the machine before the eye, we are forced to the conclusion that the injury to plaintiff's hand could not have been caused by the portion of the saws above the feed table in the manner described by the ninth question and answer of the special verdict; that such manner of injury was an impossibility, in the light

of the physical facts appearing without dispute. Being so opposed to possibility, the verdict on that subject cannot stand. It is not supported by any credible evidence. *Badger v. Janesville C. Mills*, 95 Wis. 599, 603; *Vorbrich v. Geuder & P. Mfg. Co.* 96 Wis. 277; *Cawley v. La Crosse City R. Co.* 101 Wis. 145, 149; *O'Brien v. C., St. P., M. & O. R. Co.* 102 Wis. 628, 632.

Since the jury are thus conclusively wrong as to the particular peril from which the injury resulted, their other findings upon which the judgment rests are vitiated. Their answers to the eighth and ninth questions establish what exposure they had in mind as causing the injury, and exclude the supposition that they had any other. Their finding that defendant was guilty of negligence which was the proximate, natural, and probable cause of the injury must at once be referred to their previous answers, and constitutes only a finding that defendant was negligent in not guarding against the peril of a backward jerk of the strip of wood, bringing plaintiff's hand in contact with that portion of the saws above the feed table. If there were other perils, as of course there were, and, equally of course, some of such other perils caused the injury, the jury has not found that defendant was negligent as to such other perils, nor that its negligence was the proximate cause of the injury. So, also, with reference to plaintiff's knowledge of perils, instruction as to same, and exercise of care to avoid them, the findings are rendered immaterial. The jury have found he was ignorant, uninstructed, and careful as to a peril which did not cause his injury, but have made no findings on those subjects as to the peril from which he in fact suffered. So that the verdict fails to establish that defendant was guilty of negligence which injured plaintiff, proximately or at all, or that plaintiff is free from contributory negligence, or that the injury was not the result of mere accident. Without verdict upon some or all of those issues, judgment for plaintiff cannot stand.

Respondent invokes the rule of *Cummings v. Nat. F. Co.*
60 Wis. 603, 612; *Stacy v. M., L. S. & W. R. Co.* 85 Wis.
225, 236; and *Carroll v. C., B. & N. R. Co.* 99 Wis. 399,
that the happening of the accident alone suffices to establish
defendant's negligence and liability. In *Musbach v. Wis.
C. Co.* 108 Wis. 57, we pointed out the inapplicability of
that rule in the presence of even a reasonable possibility
that some other cause than defect in the machine might
have caused the injury. Here, as in the *Musbach Case,* the
physical facts and circumstances show the possibility, at
least, that plaintiff's injury came from the lower part of the
saws, below the feed table. Indeed, some of those circum-
stances seem hardly consistent with any other theory. The
place and direction of the cut across his hand, the volume
of blood found below the feed table, while only scattering
spots are found above, and some other circumstances, are
difficult to account for otherwise. However the weight of
probability may be, only reasonable possibility is necessary
to demand consideration of the theory of an injury below
the feed table. Whether an injury at that place could occur
without negligence on plaintiff's part, or could have reason-
ably been expected by defendant to happen in the ordinary
performance of plaintiff's duties, we need not now decide.
It is sufficient to say that neither fact appears so clearly as
to be matter of law. There is therefore a reasonably pos-
sible theory for the injury not necessarily inconsistent with
defendant's due care in equipment and operation of the ma-
chine, which fact excludes this case from the rule of the
authorities above mentioned.

From what we have said, it is obvious that by the answers
to the eighth and ninth questions the entire verdict is ren-
dered inconclusive, and insufficient to support any judgment,
and should, upon appellant's motion, have been set aside.
Refusal of that motion was error, for which the judgment
must be reversed and a new trial ordered. We deem un-

necessary discussion of the assignments of detail errors in the course of the trial, as they are of a character very likely to have no relevancy to further proceedings in the cause.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.

BARDEEN, J., took no part.

A motion for a rehearing was denied March 19, 1901.