SAMULSKI, Respondent, vs. MENASHA PAPER COMPANY, Appellant.

*October 26—November 14, 1911.*

*Trial: Questions for jury: Appeal: Review: Harmless errors: Evidence: Weight: Physical facts: Verdict not to be founded on conjecture: Master and servant: Injury from defective machinery: Contributory negligence.*

A shaft six feet or so long was located about two and one-half feet from the floor. A 14-inch x 7-inch tight and a companion loose pulley were thereon near one end and a 4-foot 500-pound iron disk on the other, having on the out face knives fastened thereto by bolts projecting through about 2-inch shoulders on the back and there held by burrs. Other 2-inch fan-shaped projections were on the back. The disk, at the back, was cased six inches therefrom and around the rim a hand hole being therein for use in removing knives as necessary. The whole weighed some 800 pounds. At speed, it turned 700 times per minute by a 30-foot x 6-inch belt from a line shaft below. The belt was kept on the loose pulley, as desired, by a stick placed close under and near the opening between the pulleys, resting on the belt box between two nails driven therein on the up side of the belt at one end and against one nail driven therein on the opposite side of the box and down side of the belt toward the tight pulley, and the belt being shifted to the loose pulley, the shaft would turn some five minutes preventing for then removal of the knives. The stick being in position, as on the particular occasion, the belt would not shift. Plaintiff, the operator, had a hand and arm injured while attempting to loosen the burrs. The disk continued to move for a time, then stopped and remained so, all things being in proper position. Some three minutes were accounted for between plaintiff's shifting of the belt and the injury. He said the disk stopped theretofore and thereat suddenly started. It had never before done so under the particular circumstances though plaintiff thought it could. The court approved a jury finding that a loose belt and inefficient prevention of automatic shifting caused the injury. Plaintiff took judgment, the court refusing judgment for defendant notwithstanding the verdict. A pictorial representation of the machine will be found facing page 285.

*Held,* that the following legal principles apply:

1. If there is fair room on the evidence for diverse conclusions as to the ultimate fact in a legal action, which is right is for the jury, and reasonable doubts as to whether the case is within the province of the court or that of the jury should be resolved in favor of the latter.

2. Under the foregoing, the decision of the trial court should not be overruled except upon its appearing by the record to be manifestly wrong.

3. The testimony of a witness or finding of a jury, contrary to manifest physical situations, common knowledge, or conceded facts, is efficiently impeached thereby.

4. A physical fact, existent as matter of common knowledge or established by evidence beyond room for fair controversy, cannot be overcome by human testimony, opinion, or theorizing.

5. The verdict of a jury to be warranted, must be grounded on reasonable certainty as to probabilities arising from fair consideration of the evidence, not on conjecture or guessing, or possibilities.

6. The party on whom the burden of proof rests not being able by evidence to remove the case from the field of conjecture into that of probability, with greater certainty than to leave one to choose between equally strong conflicting probabilities, no jury question is raised.

7. Stability of trial determinations is of such importance, reasonable doubts should be resolved in favor thereof, technical defects be ignored, and errors however numerous or plain or inexcusable, passed as inconsequential unless, manifestly, had they not occurred, the result might probably have been materially more favorable to the party complaining.

8. If facts appear within the above rule rendering evidence from the mouths of witnesses to the contrary incredible, theorizing upon such evidence is mere conjecturing, not to be indulged in by trial courts even by their burdening the jury in respect to the matter.

9. In the circumstances stated, a case dependable upon conclusions inconsistent with verities, should be taken from the jury on motion and a verdict resulting contrary to such verities set aside and the case dismissed on request therefor.

10. On the facts fully established as indicated above in the light of the stated legal principles there was no legitimate basis for the vital findings in favor of the plaintiff and the verdict should have been corrected accordingly and judgment rendered thereon for the defendant.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Rusk county: JAMES WICKHAM, Circuit Judge. *Reversed.*

Action to recover for a personal injury. The pleadings were as indicated by the following which the evidence established, or tended to:

Plaintiff, a man about twenty-seven years of age of average intelligence and experience, while in the employ of defendant operating a machine, called a barker, was severely injured in his left hand and arm. The general nature of the machine was this: A heavy iron disk-shaped wheel, about four feet in diameter, carried at the end of a shaft, there being on the outer and exposed face four knives about eight inches long, fixed thereto and set out sufficiently to engage and plane off bark from blocks of wood when pressed against them for that purpose, which disk turned, when at full speed, 700 or more revolutions per minute. Knives, from time to time, were required to be removed and sharpened. A cover over the back of the disk and some five inches therefrom forming a casing extending around but clear of the rim of the disk. An opening in the back of the cover sufficiently large to enable a person to insert his hand through and, with a wrench, turn off the burrs from the bolts holding the knives in place. Projections on the back side of the disk, standing out three to four inches, rendered it exceedingly dangerous to so insert a hand for loosening the burrs without the disk being at rest. A shaft stationed some two and one-half feet from the floor. A tight and companion loose pulley seven inches on the face and about fourteen inches in diameter—by means of which and their connections the disk was operated,—located on the shaft three feet or so from the back of the disk, such pulleys being far enough apart to clear each other and the tight one being nearest the disk. A drive belt some thirty feet long, six inches wide, of heavy leather, reaching the pulleys from the main drive shaft below the floor.

The disk, weighing some 500 pounds, in use, revolved with

such velocity and force that, if, when at full speed, the belt was moved to the loose pulley it would continue to turn for some time.  Upon moving the belt from the tight to the loose pulley to stop the machine, a piece of wood in the form of an ordinary broomstick, was laid on the boxing of the pulleys, which extended from the floor belt opening to within an inch, more or less, of the pulleys, and just under the clearance between them with the end on the up or slack side of the belt between two large nails, driven into the edge of the box far enough apart to receive it below the heads, they being bent in to prevent it from raising, materially, or rolling, and with the other end resting against a nail driven into the edge of the box on the opposite side, and on the side of the stick toward the tight pulley.  The stick so placed, with the nails in position to retain it and properly performing their office, and the belt on the loose pulley, efficiently prevented such belt from engaging the tight pulley and giving motion thereto.  In case of the nails, particularly either or both on the side of the stick toward the tight pulley, being bent over in such direction, the stick could roll somewhat and raise up a little, permitting the belt to creep toward the tight pulley, and possibly reach or engage it slightly.  The stick could not raise up much as it only slightly cleared the pulleys.

Plaintiff, on the occasion in question, understood the mechanism of the machine, the use of the stick, as aforesaid, to prevent the drive belt from unexpectedly starting the disk to revolve, and danger of attempting to remove the knives while the disk was in motion.  The nails on the up side of the belt were bent over a little towards the drive pulley and spread sufficiently at the top to permit of the stick rolling or raising up a little.  It could not raise to the top of the nails by reason of the interference aforesaid.  Plaintiff had operated the machine for a considerable time and taken off the knives, as required.  He knew the danger of starting to do it while the disk was in motion.  On the particular occasion he placed

the belt on the loose pulley, as usual, and put the broomstick in place. He testified that after the disk stopped revolving he inserted his hand, holding the wrench, through the opening to loosen the knife bolt. In such circumstances there had never been an unexpected starting of the disk to revolve either in his experience or that of any other person. As he was in the act of loosening a burr the disk suddenly started, catching his hand and causing the severe injury complained of. The belt was somewhat loose, as was claimed, allowing it to raise a little, intermittently, and move a little from side to side on the pulley. It touched the stick on the downward side of the belt but not on the upward side. Immediately after the accident the stick was found in place, the belt on the loose pulley and the disk still moving. Two or three minutes thereafter it came to a rest without any change in the belt or stick. Plaintiff, as he testified, just before he proceeded to loosen the knife bolts, complained to the foreman about the belt being too loose, was requested to proceed, and given assurance that the belt would be fixed.

The cause was submitted to the jury, resulting in these findings in addition to those relating to the injury and the amount of damages: The belt was running on both pulleys when plaintiff was injured. The stick used to prevent the belt from slipping from the loose to the tight pulley was in its usual position between the nails when plaintiff was injured. The belt was defectively loose. Defendant failed to exercise ordinary care in respect thereto and the arrangement to prevent the belt from automatically slipping from the loose pulley so as to start the other. Such fault was the proximate cause of plaintiff's injury. Prior to the injury plaintiff notified the foreman that the belt was defective and requested him to repair it. The foreman promised to do so. Plaintiff continued to work relying thereon. He did not remain a longer time than was necessary to enable defendant, acting reasonably, to make the repairs. Plaintiff was free

from contributory fault.    The disk had stopped moving by its own momentum before plaintiff was injured.    He did not assume the risk of the disk unexpectedly starting by reason of the belt slipping from the loose to the tight pulley.

Damages were fixed by the jury at $5,000, and judgment was rendered on the verdict in plaintiff's favor; numerous exceptions being saved in defendant's behalf for a review by this court, including an exception to a refusal of judgment in the latter's favor notwithstanding the verdict, and refusal to correct the verdict so as to find in harmony therewith.

For the appellant there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

For the respondent there was a brief by *Thomas & Carow,* attorneys, and *Stiles & Devaney,* of counsel, and oral argument by *J. W. Carow.*

MARSHALL, J.    Only familiar legal principles are involved in this appeal.

The case has been studied and a conclusion reached with full appreciation, it is thought, of the rule that if, in a legal action, there is fair room as to a matter of fact for a conclusion on the evidence either way, which is correct is a jury question, not to be invaded by judicial interference and of such importance that reasonable doubts should be resolved in favor of the decision rendered.    But whether there be such doubt when the point is raised on motion, is a judicial question which is as exclusively within the province of the trial judge to solve, as truth involved in conflicting evidence is within that of the jury.    Efficient discharge of duty in the former province, is as important as such discharge in the latter, and often calls for the highest degree of judicial courage. That reasonable doubts should be resolved in favor of the one is but little less important, if any, than that they should be so resolved as to the other.    Hence the necessity for, the logic of, and the great dignity which should be accorded to,—as

this court has often declared,—that other rule, going hand in hand, so to speak, with the former, that the trial judge's determination, in the absence of mistake of law, using that term in the technical sense, should not be overturned on appeal, unless clearly, prejudicially, wrong. That respect should thus be accorded, also, because, from the very nature of the case, the trial judge who sees the witnesses and hears them testify, is, in general, the best judge of whether the given matter might fairly be decided for the plaintiff or defendant.

Notwithstanding the foregoing, there is this other rule, which is sometimes, perhaps, as the history of cases in this court shows, not appreciated below or overlooked altogether: The testimony of a witness or finding of a jury, contrary to unquestionable physical situations, or common knowledge, or conceded facts, is of no weight in favor of the side it is invoked to support, while it may be self-destructive,—be successfully impeached by its demonstrated utter improbability or impossibility. *Badger v. Janesville C. Mills,* 95 Wis. 599, 70 N. W. 687; *Flaherty v. Harrison,* 98 Wis. 559, 74 N. W. 360; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 329, 80 N. W. 644; *Musbach v. Wis. C. Co.* 108 Wis. 57, 66, 84 N. W. 36; *Buckmaster v. C. & N. W. R. Co.* 108 Wis. 353, 356, 84 N. W. 845; *Albrecht v. C. & N. W. R. Co.* 108 Wis. 530, 545, 84 N. W. 882; *Beyersdorf v. Cream City S. & D. Co.* 109 Wis. 456, 462, 84 N. W. 860; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 345, 85 N. W. 1036; *Muenchow v. Theo. Zschetzsche & Son Co.* 113 Wis. 8, 88 N. W. 909; *Marshall v. G. B. & W. R. Co.* 125 Wis. 96, 100, 103 N. W. 249; *Vetter v. Southern Wis. R. Co.* 140 Wis. 296, 300, 122 N. W. 731; *Kroger v. Cumberland F. P. Co.* 145 Wis. 433, 440, 130 N. W. 513.

An uncontrovertible found, or conceded fact, or matter existing beyond all reasonable controversy, manifestly, can successfully challenge testimony to the contrary from the mouth of a witness, or number of them. That is elementary, and no

more tersely stated and significantly applied than in *Musbach v. Wis. C. Co., supra,* in language by Mr. Justice Dodge, speaking for the court, substantially thus: "The physical fact" established by the evidence beyond controversy "is such as human testimony, opinion, or theorizing cannot overcome, and of itself is sufficient to defeat the plaintiff's theory submitted to the jury" and condemns the finding in his favor.

Obviously, the real right of a matter cannot be changed by the mere say-so on oath of any one. It may well be established by evidence, but cannot be thus created. Just so with a verdict. The jury may go upon excursions of discovery for truth within the field of evidence to the uttermost boundaries of reason, not boundaries set by any particular persons, or persons generally, but such as rational men of common sense might set without passing beyond the dividing line between the field of probabilities into that of mere guessing or conjecture. So it happens now and then, that cases reach this court, where notwithstanding the decision below, the judgment cannot stand the test of that rule though it seems to have done so as applied below, or through some oversight the application was not there made.

By reason of the foregoing it has been commonly said: Verdicts must rest on probabilities, not on bare possibilities. There is not capacity in any number of the former to create the latter. So the person on whom the burden of proof rests to establish the right of a controversy, must produce credible evidence from which men of unbiased minds can reasonably decide in his favor. He cannot leave the right of the matter to rest in mere conjecture and expect to succeed. *O'Brien v. C., St. P., M. & O. R. Co.* 102 Wis. 628, 632, 78 N. W. 1084; *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729; *Clark v. Franklin F. Mut. F. Ins. Co.* 111 Wis. 65, 68, 86 N. W. 549; *Hart v. Neillsville,* 141 Wis. 3, 15, 123 N. W. 125; *Stock v. Kern,* 142 Wis. 219, 223, 125 N. W. 447.

The doctrine of those cases condemns the grounding of a verdict upon such shadowy proof as not to establish the vital

facts to a reasonable certainty. A mere choice of possible or conjectural theories will not do. As said in *Stock v. Kern,* by Mr. Justice SIEBECKER,—speaking for the court in reaffirmance of a declaration found in some of the cases heretofore cited,—the person on whom the burden of proof rests does not meet it "by proof which is as consistent with a theory that the injury was due to a cause not actionable as with the theory that it was due to an actionable cause, and, in such a state of the proof, the case fails to come within the proper province of the jury." And, obviously, it might be added, *a fortiori,* it so fails when there is no definite satisfactory proof, from any fair viewpoint, supporting any legitimate theory of injury from actionable fault.

It seems appropriate to thus hold up to view important legal principles so vital to this case. With appreciation of the undisputed matters and the verdict, it is very difficult to see where there is any legitimate basis in the evidence for the jury's conclusion, either that a loose drive belt or defective appliance for preventing it from unexpectedly engaging and turning the tight pulley, or both, caused the disk to turn on the occasion in question. True, as said, the decision below should be supported, if it reasonably can be. Stability of determinations of trial courts is of inestimable importance, both to the parties and the public. Technical defects, however numerous, should not constitute a basis for efficient interference. They should not count at all in that regard. Doubts should be resolved in favor of stability. Errors, however clear, inexcusable, or numerous, should be regarded as inconsequential, unless, manifestly, had they not occurred the result to the complaining party might, within reasonable probabilities, have been substantially more favorable to him. Such is the spirit of the Code. Such is the trend of judicial thought in this jurisdiction. Such, it is believed, in general, at least, and never intended otherwise, has characterized the disposition of controversies here.

Now how does this case square with the stated elementary

legal principles and public policy as declared by the Code and vitalized by the decisions of this court? To answer that with clearness we must restate, with more detail, matters referred to in the relation of facts preceding the opinion, endeavoring to do so with such logical arrangement as will demonstrate the proper conclusion without lengthy discussion of evidence and, certainly, any effort to balance probabilities.

In the first place, there is the verdict of the jury, on abundance of evidence and unchallenged on behalf of respondent, that the stick, commonly, efficiently used to keep the belt from slipping from the loose to the tight pulley, was in its proper place when plaintiff was injured. That condemns the uncertain, contradictory evidence of respondent as unreliable. The stick had efficiently done the work it was designed for during some eleven months and the time of several operators. Next there is the fact, established by the physical situation, speaking more unerringly than could witnesses by verbal testimony, that the belt could not efficiently slip to the tight pulley with the stick in place to prevent it. Respondent, notwithstanding much wavering, practically admitted that, but by his contradictory statements he left the matter, from his viewpoint, uncertain whether the stick was or was not in place when he was injured. He testified that it lifted up or was thrown out of the nails. That was impossible because of proximity of it to the lower side of the pulleys. If it could have been lifted up so as to permit of the belt moving over materially toward the tight pulley, in falling back it would, necessarily, have fallen outside the nails on the side of such pulley. The jury appreciated that, and, so, grounded the verdict on the positive evidence of witnesses, that, immediately after the injury, the stick was observed in place and doing its work. The photograph before us, in connection with the evidence, leaves unmistakable the suggestion that the stick could not have been lifted out of the nails by the belt, on account of interference from the rims of the pulleys. Those

clearly established facts,—one found by the jury and one shown beyond reasonable controversy by evidence,—leave the theory that want of an efficient apparatus for preventing the belt from unexpectedly slipping from the loose to the tight pulley, or an abnormally loose belt, was, or both together were, the cause of the injury, wholly without support.

On the question of whether the belt was too loose, the undisputed evidence that it efficiently did the work of running the barker, demonstrates that there was no looseness permitting it to jump from one pulley to the other, even if the stick interference had not existed.   Again, the fact that the heavy thirty-foot six-inch belt hung on the inch wider pulley and that the stick projected at least half an inch under the edge of the latter, demonstrates that there could not have been any such jumping up and down of the belt as claimed, nor any irregular side motion to engage the tight pulley and give motion thereto, much less to suddenly start it, as respondent claimed.   We fail to find support in the evidence that it ever was, or could be, so started, except by the most shadowy of conjectures.   We do not overlook that respondent testified that he saw the machine start once or twice before he was hurt, and that the belt ran, unexpectedly, over on to the tight pulley, but that was in connection with his testimony that the stick was thrown from between the nails, which could not have occurred, as we have seen.   Moreover, we must remember that according to the verdict, it was not thrown out on the occasion in question.   Then, while respondent testified that the stick jumped out, he said also, he did not and could not see it do so, as his back was towards it, as manifestly must have been the case; and finally said, he did not know how the disk started and never knew of the belt automatically going from the loose to the tight pulley so as to have that effect.

We should say, in connection with the foregoing, that the claim in the complaint was that there was no guard whatever to prevent automatic slipping or creeping of the belt from the

loose to the tight pulley; that improper construction in that
regard together with the two pulleys being improperly set too
near to each other, and the belt being too loose, caused the
mischief. The undisputed evidence was, however, that the
pulleys were set in the customary way and, as before stated,
that the stick guard had been long efficiently used, leaving no
element of alleged defect but that of a loose belt, and no evi-
dence which could, at best, give rise to more than a conjecture
that such condition existed so as to cause the machine to start
while the stick remained in its place.

The legal principle before stated, that mere verbal testi-
mony of witnesses, however positive, cannot displace conceded
facts, or demonstrated or found physical situations, so as to
warrant a verdict in favor of the former, as also the principle
that mere conjectural theories have the same infirmity; ap-
plied to the case, seem to efficiently favor the contention that
the court fatally erred in refusing to dispose of it in appel-
lant's favor for want of evidence to support a verdict other-
wise. We will now test that view, briefly, by looking beyond
the field of impossibility or conjecture to that of probability,
for some rational theory, based on the evidence, of a non-
actionable cause of the injury.

The theory of appellant's counsel is that respondent started
to remove the knife burrs after changing the belt to the loose
pulley before the disk stopped revolving by its own momen-
tum. That seems to have strong support in the evidence, as
will be seen.

It is a verity that the disk itself weighed some 500 pounds.
With its shaft and drive pulley it must have weighed around
800 pounds. It revolved, when at full speed, some 700 times
per minute. Manifestly such a heavy construction to sustain
such motion without disturbance of which there would have
been evidence, had it existed, must have been on a substan-
tially perfect balance. Moreover, the affirmative evidence es-
tablishes that as a verity. Then the rim of the disk; evi-

dently the heaviest part of it, because the powerful movement of the appliance was depended upon to thrust the knives through the wood in the barking operations with a minimum of efficient resistance, must, when the belt was changed to the loose pulley, have been moving at a speed around twenty-five feet per second, or, to put it more appreciably, have been going one revolution in half a second or thereabouts.    That— without any interference but the air and slight friction in the journals,—upon the belt being removed to the loose pulley, the momentum would sustain motion for a considerable time, is manifest.    If there were a slight contact, intermittent or otherwise, between the belt and the rim of the tight pulley, it would, necessarily, have prolonged the period.    If motion was aided thereby only sufficient to prolong somewhat the period for the disk to come to a full stop, then, manifestly, it was not sufficient to overcome the inertia thereafter and start the disk, unexpectedly.    All the facts in this regard are self-evident or demonstrated by the evidence, or conceded. The only disputed fact is as to the period the disk would revolve by its own momentum, if, when running wholly idle and at full speed, the drive belt was changed.    Respondent said, at first, it would stop at once, then that it would take some time; a couple of seconds, may be a minute.    In conclusion he said he did not know as he never timed it.    So his evidence, in addition to being wholly unreliable, independently of the certainty afforded by natural laws, is rendered without any weight whatever by the latter.    Another witness said the disk would continue to revolve ten or fifteen seconds, that he never timed it, but some length of time.    Another witness, who was, perhaps, more familiar with the machine than any other, testified that, in the circumstances supposed, the disk would continue to revolve at least six or seven minutes. Another witness, who was very familiar with the machine, put the period at five minutes from having actually timed it. So the only reliable, the only believable evidence, consistent

with natural laws, or which arises above the dignity of mere
guesswork, fixes the period at around five minutes or more.
That must be added to the list of verities to be considered.
One more in this connection,—the momentum of the disk was
nearly exhausted at the fatal instant.   It was running quite
slow, else the three- or four-inch projections on the back of the
disk, reaching out nearly to the inner side of the cover, would
have severed the man's hand and arm instantly, instead of
only breaking three fingers and the arm.   Assuming the disk
continued to revolve by its own momentum till the injury, the
interval must have been five minutes or more.   That assump-
tion appears to be unassailable, so it seems, that such interval
was about five minutes becomes another verity.

Now as to the movements of respondent from the time he
changed the belt till the injury.   He said, at first, that he
was on the front side of the barker and saw the disk stop, and
then started to change the knives.   Later, he contradicted
that, saying the next thing he did after changing the belt was
that he went down below to put a sack into the shavings pipe
and, upon his return, he put his hand through the hole on the
back side of the disk and received his injury.   That such
were his movements was made quite clear by other evidence.
The distance he traveled would not have required, at most,
more than a minute and the time for adjusting the sack an-
other such interval or two, altogether not nearly enough time
for the disk to cease revolving.   He said that when he came
back the disk was stopped.   That seems a mere guess, be-
cause he made no claim to have then observed it at the front or
through the opening at the back.   He just picked up his
wrench, put his hand through the opening, and instantly was
injured.

Consistent with the foregoing, the evidence is undisputed
that, immediately after the accident, the disk was still moving
slowly, and a little later became stationary, the stick and belt
being in proper position, all in harmony with the verdict as

to the stick. Respondent, after making confusing statements, frankly said, as to the cause of the accident: "I don't know how it happened. I was pretty near crazy." And later, trying to clear up his previous contradictions, he involved his evidence still further by this:

"Before the day I was hurt I have seen the belt slip from the loose pulley onto the tight pulley and start the machine, one time. I said that the belt slipped, on the day I was hurt. I didn't see it. I didn't say the belt was loose at any time. It was loose like that, it was slipping. Before the day I got hurt I never saw the belt slip over the loose pulley to the tight pulley and start the machine when no one was touching it. I never saw that. I think it could be so, but I never saw it."

Does not the foregoing demonstrate, beyond any probability to the contrary, that respondent came to his most regrettable misfortune from his own carelessness,—from putting his hand into the zone of danger before the disk had time to stop after the belt was shifted and without assuring himself by observation at the face of the disk, or through the hand hole, or by testing with a stick, reached through the opening, or by looking at the shaft which was within his reach and observation by a mere glance to the right, or in some other of several ways which might be mentioned? He knew, as he said, and being an experienced adult, must have appreciated, the extreme danger of taking any risk whatever of starting to remove the knife burrs before motion in the disk had ceased. To put it very mildly, there is strong probability that such was the case as against, at the best for respondent, a bare possibility. But if it were conceded that respondent's theory,—which he confessed, as we have seen, was merely a matter of opinion, and which is unsupported by any other witness,—has some sort of shadowy probability in its favor, it fails, in our judgment, in any view which a jury, acting considerately, could adopt, to rank with the probability to the contrary. Hence the principle heretofore stated applies, and most em-

phatically, in appellant's favor, and error was clearly committed in the failure to recognize it in response to the motion for direction of a verdict, and subsequent motions challenging the trial court on the same subject,—that the party holding the burden of proof cannot lift it efficiently by merely producing proof which, in some reasonable view of it, establishes a legitimate theory of actionable wrong, but with no greater certainty, from any fair viewpoint, than an opposing theory, grounded on the evidence, of no such wrong.

This opinion has been extended to considerable length in deference to the weight we must give to the decision of the trial court. In the face of such deference we cannot escape the conclusion that the rule governing the subject is emphatically satisfied in favor of appellant, and that the judgment must be reversed and appropriate directions be given for final disposition of the case.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to render judgment of dismissal with costs in harmony with the motion made in defendant's behalf on the trial.