WOLFE, Plaintiff and Respondent, vs. BRIGGS and another, Defendants and Appellants: SNYDER and another, Interpleaded Defendants and Respondents. [Case No. 114.]

SNYDER and another, Plaintiffs and Respondents, vs. BRIGGS and another, Defendants and Appellants: METROPOLITAN CASUALTY INSURANCE COMPANY, Interpleaded Defendant and Respondent. [Case No. 115.]

*December 5, 1951—January 8, 1952.*

For the appellants in both cases there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur Wickham* and *Richard S. Gibbs* of counsel, all of Milwaukee, and oral argument by *Mr. Gibbs* and *Mr. Wickham.*

For the respondent Joseph Wolfe in Case No. 114 there was a brief by *Fugina, Kostner, Quinn & Ward* of Arcadia, and oral argument by *La Vern G. Kostner.*

For the respondents Joseph Snyder and Mary Ellen Snyder in Case No. 115 there was a brief by *Lees & Bunge* and *Bosshard & Arneson,* and oral argument by *Lawrence M. Engelhard,* all of La Crosse.

For the interpleaded defendants, and respondents in both cases there was a brief by *Hale, Skemp, Nietsch, Hanson & Schnurrer* of La Crosse, and oral argument by *Thomas H. Skemp*.

BROADFOOT, J.  The principal contention of the appellants relates to which vehicle invaded the other driver's lane of travel.  Hermann testified that he was driving upon his own side of the highway; that Snyder approached in Hermann's lane of travel and that he, Hermann, swung his truck to the left to avoid a collision at the same time that Snyder turned to the right.  Hermann claimed an emergency was created by the manner and place in which Snyder was driving his automobile.  Joseph Snyder and Wolfe received head injuries.  Neither could remember the collision itself or any of the events immediately preceding it.  There was medical testimony that their lack of memory was due to their head injuries.  Mrs. Snyder testified that her husband was operating his car on his right-hand side of the road at all times; that she looked up when the vehicles were fifty to a hundred feet apart; that the truck was partly on its own side of the road and it was sliding toward their car.  She shouted to her husband "that truck is going to hit us" and about the time she shouted she observed her husband turning the car farther to the right, trying to get off on the shoulder on the east side of the highway.  Thus there was a conflict in the testimony that would ordinarily make a jury issue.

However, the appellants contend that Mrs. Snyder's testimony was vague and uncertain, that she had not been paying close attention, and that the undisputed physical facts demonstrate that the accident happened on the west side of the highway.  The appellants cite several Wisconsin cases stating the rule that where human testimony is in direct conflict with established physical facts, such testimony will not support the verdict of the jury.  Among the cases cited are *Samulski*

v. *Menasha Paper Co.* 147 Wis. 285, 133 N. W. 142; *Strnad v. Co-operative Insurance Mutual,* 256 Wis. 261, 40 N. W. (2d) 552; *Martin v. Barry Transfer & Storage Co.* 250 Wis. 574, 27 N. W. (2d) 719; and *Prideaux v. Milwaukee Automobile Ins. Co.* 246 Wis. 390, 17 N. W. (2d) 350.

The respondents do not challenge the rule laid down in those cases, but contend that there were physical facts which are in dispute and that they are of such a nature that different inferences may be drawn from them.

Following the collision, the sheriff and the traffic officer of Trempealeau county were called to the scene of the accident. Photographs were made and measurements taken so that the record is clear as to the situation then. The truck came to rest facing in a southeasterly direction, almost at right angles to the highway, with the front of the truck in the ditch on the east side thereof and the rear wheels on the extreme east part of the traveled portion of the highway. Tracks were visible in the snow for a short distance to the rear of the truck, indicating that the truck was traveling in a southeasterly direction when it left the highway. The Snyder car was on the east half of the highway, facing in a southwesterly direction, which was opposite to the direction in which it had been traveling. The body of Mrs. Wolfe was directly in front of the right rear dual wheels of the truck and on the extreme east part of the highway.

The traffic officer testified that there was debris and dirt on the highway beginning at a point seven feet four inches from the west edge of the traveled portion thereof, and some antifreeze nine feet from the west edge of the highway. The measurements given were to the west edge of the dirt and antifreeze and each extended a few feet to the east thereof. In addition there was dirt and antifreeze under and near the automobile where it came to rest. The traffic officer found a U-shaped mark on the highway, which he traced to the Snyder car. This U-shaped mark was entirely on the east

side of the highway. The officers further testified that they found tire marks in the snow extending in a northerly and southerly direction on the east side of the highway. They measured the tracks, including the depth and width of the impressions made by the knobs on the tire and found that they corresponded with the size of the knobs on the left rear tire of the truck.

The appellants contend that the dirt and antifreeze on the west side of the highway are conclusive evidence of the place of the collision. It does not appear from the record whether the dirt and antifreeze on the west side of the highway came from the Snyder car or from the truck, and it is the contention of the respondents that if they came from the car they might have reached that position because of the impact and because the car was turned in the opposite direction. Respondents also contend that because of the contour of the highway the antifreeze would flow from the Snyder car to the west.

Respondents contend that at the time of the impact Mrs. Wolfe was thrown out of the left door of the car while it was in the process of being whirled around upon the highway, and that had the collision occurred on the west side of the highway she could not have been in the position in which she was found without having the wheels of the truck pass over her body, and that her position on the highway can only be reconciled with the "U" mark made by the tires of the car which was turned around on the east side of the highway.

The testimony of the officers as to the tire tracks on the east side of the highway, which they testified were made by the left rear tire of the truck and which led to that tire, could warrant an inference by the jury that the truck was traveling on the wrong side of the highway. The appellants contend that because Hermann had driven north on the highway a short time before the accident that the tracks could have been made by the right rear wheel on the northbound trip, and that the tires were of similar make and design. The

defendant Briggs also visited the scene of the accident and testified that he found truck tire tracks on the west side of the highway. The officers searched for tracks on that side and found none, and Briggs did not mention to the officers that he had found tracks there.

The trial court, who viewed the premises and saw and heard the witnesses upon the stand, stated in his memorandum decision that the physical facts are not conclusive and that they do not render the testimony of Mary Ellen Snyder impossible or improbable. The record discloses that there is a dispute as to the physical facts and the inferences that may be reasonably drawn therefrom, and therefore the jury was warranted in finding as it did in determining that the truck was operating on the wrong side of the highway. There was also evidence to support the finding of the jury as to Hermann's negligence with respect to lookout and management and control of his vehicle. Its finding of negligence as to speed can only be sustained in view of the fact that the truck, with its load of milk, weighed approximately nine thousand pounds and that the highway was slippery. The finding of the jury in that respect is not material in view of the fact that there is credible evidence to sustain its findings of negligence in the other respects.

The appellants next contend that the trial court abused its authority in doubling the jury's assessment of pecuniary damages resulting from the death of Mrs. Wolfe. They concede that the trial court has the power to increase an obviously and grossly inadequate damage assessment or in the alternative to grant a new trial on the issue of damages, but contend that the award of $2,500, in the light of all of the evidence and all the reasonable inferences which the jury might draw from the evidence, was not grossly inadequate.

Upon the date of the accident Donna Wolfe was nineteen years of age, her husband was thirty years of age, and their son was approximately one year of age. The wife had a

life expectancy of 42.87 years and the husband's life expectancy was 34.63 years. The Wolfe family owned, lived upon, and operated a farm of three hundred twelve acres. There were seventy acres tillable. They had fifteen milk cows and four head of young stock. Mrs. Wolfe, without help, cared for their son, did the housework, and to the extent that she was able she helped her husband with his farm operations. Mrs. Wolfe did not help with the milking, but she did wash the milk cans, the milk pails, and the cream separator. Joseph Wolfe testified that because he was unable to hire a housekeeper to take over the duties formerly attended to by his wife, he was forced to discontinue his dairy operations. There is no accurate yardstick for measuring the value of the services of a farm wife. However, those services are of such value that it is almost impossible to operate a farm successfully without them. The trial court found under all the facts and in view of the present economic value of the dollar that the award of the jury was conclusively inadequate. It found that the sum of $5,000 was the least amount that an unprejudiced jury, properly instructed, would award. We agree with its determination.

*By the Court.*—Judgments affirmed.